## WOODWARD v. SPRING CANYON COAL CO. et al.

No. 5789. Decided December 16, 1936. (63 P. [2d] 267.)

*Irvine, Skeen & Thurman* and *M. C. Faux,* all of Salt Lake City, and *Henry Ruggeri,* of Price, for appellants.

*Willard Hanson,* of Salt Lake City, and *Thorit Hatch,* of Helper, for respondent.

ELIAS HANSEN, Chief Justice.

Plaintiff secured a judgment in the trial court against the defendants. The action which culminated in the judgment was for the death of plaintiff's minor son, Charles Franklin Woodward, aged eight years, who was killed by an automobile which was being operated and driven by the defendant David Brown, as the agent of the defendants Spring Canyon Coal Company and Royal Coal Company, corporations. The defendants appeal. By their assignments of error, they seek a reversal of the judgment because, as they claim, the trial court erred in refusing to permit the defendants to refresh the recollection of one of their witnesses by asking leading questions, and also because, as they claim, the court erred in its instructions to the jury. Those portions of the complaint which bear upon the ques-

tions presented for review and determination read as follows:

"3. That there is now, and at all times hereinafter mentioned was, a certain paved public highway extending through said Carbon County, and especially between the cities of Castle Gate and Helper in said county, and that said highway is known and called U. S. Highway No. 50, and the paved portion thereof is 23 feet in width, and on each side thereof is a shoulder varying in width of from three to four feet, and that said highway, especially at and near the place where the grievances hereinafter alleged occurred, was extensively used by pedestrians for travel.

"4. That on the 1st day of November, A. D. 1934, the said defendant, David Brown, was then and there operating a certain automobile in a southerly direction along and upon said highway aforesaid and at a point thereon approximately two miles northerly from the town of Helper and at and near the place on said highway where the road from the town of Martin in said Carbon County aforesaid intersects said highway, and plaintiff alleges that the said defendant Brown at the time he was operating said automobile aforesaid and at the time of the grievances herein alleged, was driving and operating said automobile for and on behalf of said defendant corporations aforesaid, and was then and there the agent and servant of said employer while driving and operating said automobile, and was then and there performing service and duties for the said defendant corporations, and plaintiff says that at said time and while operating said automobile as aforesaid, said defendant Brown then and there carelessly and negligently operated said automobile in the following particulars, to-wit: That he, the said defendant Brown, then and there drove and operated said automobile along and upon said highway at a great, excessive and unlawful rate of speed, to-wit, at a rate of speed in excess of 50 miles per hour, and then and there carelessly and negligently failed to keep a careful or any lookout for persons along and upon said highway, and then and there carelessly and negligently failed to have said automobile under control, and plaintiff alleges that on said highway at and near said place aforesaid, is a curve and that the view of a driver is obstructed by reason of buildings, poles and fences, and a driver attempting to go around said curve is unable to see but a very short distance ahead of the vehicle which he may be driving, and that notwithstanding the same the said defendant Brown then and there carelessly and negligently drove and operated said automobile around said curve without slackening the speed of the same and without being able to see persons along and upon said highway as aforesaid, and without

having said automobile under control, and then and there carelessly and negligently drove and operated said automobile off the paved portion of said highway and onto the shoulder thereof, well knowing that a great many pedestrians traveled along and upon said shoulder, and plaintiff says that there was no other way for pedestrians to travel in proximity to said highway except along and upon the same, or upon the shoulder thereof; and plaintiff says that at said time aforesaid, one Charles Franklin Woodward was then and there traveling in a northerly direction along and upon the shoulder of said highway and within approximately two feet of the paved portion thereof, and was then and there exercising due care and caution for his own safety, and that the said defendant Brown by reason of his aforesaid negligence, caused said automobile to strike upon and against the said Charles Franklin Woodward, and the said Charles Franklin Woodward was, by reason thereof, thrown and hurled a considerable distance, and was then and there bruised in and about his head, face and body, and was so badly injured that he languished a short time, and then and there, and upon the 2nd day of November, A. D. 1934, so languishing died."

In their answer defendants admit that on the occasion in question defendant Brown was driving and operating an automobile along the highway described in the complaint and that he was so driving and operating the automobile as the agent of the defendant corporations and that Charles Franklin Woodward was killed by coming in contact with the automobile so being driven by defendant Brown. They deny negligence on the part of Brown and allege that the injury and death of plaintiff's son, Charles Franklin Woodward, was proximately caused by the son's own negligence and by his contributory negligence. The evidence establishes without conflict these facts: At about 5 o'clock on the afternoon of November 1, 1934, the defendant Brown was driving south on the state highway approximately 2 miles northerly from the town of Helper. When he reached a point a short distance south of where the road from the town of Martin comes into the state highway, he met three boys, Clarence Charles Franklin, the deceased, and Marcelle Woodward. They were running north along the west shoulder of the highway for the purpose of

buying some candy at a nearby store. Clarence, aged 10 years, was in the lead. Next came Charles Franklin, aged 8 years, and in the rear came Marcelle, aged 7. At the point where the Brown automobile met the Woodward boys, the paved portion of the highway was about 22 feet wide. On each side of the paved portion of the highway and running parallel thereto was an earthern strip or shoulder about 3 feet wide. To the east of the east shoulder was the Price river. To the west of and adjoining the west shoulder was a ditch running parallel with the road. Along the west bank of the ditch was a wire fence. There were a number of houses near and along the west side of the road in the vicinity of the place where the Woodward boy was killed. Coming from the north towards the point where the accident occurred, the road curved somewhat, but the curve was not sufficient to prevent one driving an automobile on the highway from seeing the Woodward children for at least 150 feet north of where the accident occurred.

There is a sharp conflict in the evidence as to how the accident occurred. According to the evidence adduced by plaintiff, the defendant Brown was driving his automobile at a speed of 50 miles or more per hour just before the accident; that as he approached the children the right wheels of his automobile were driven off the paved portion of the highway and onto the west shoulder about 2 or 2½ feet, thereby striking the boy who was killed. Defendants' testimony tends to show that Brown was driving his automobile not to exceed 25 miles per hour at the time of and just before the accident; that he was driving the automobile on the paved portion of the highway, the right wheels thereof at the time of and just prior to the accident being from 1½ to 2 feet east of the west edge of the pavement; that just at the instant when the Brown automobile met Clarence Woodward who was in the lead, Charles Franklin, in an attempt to go around to the east of and ahead of Clarence, ran directly into the right side of the Brown automobile; that the handle on the right door of the Brown auto-

mobile came in contact with the upper lip, nose, and right eye of Charles Franklin resulting in the injury which caused his death. No claim is made by defendants that the evidence offered by plaintiff, if believed by the jury, is insufficient to sustain the verdict. Therefore, it is not necessary to recite the evidence in greater detail.

Defendants called as one of their witnesses Marcelle Woodward, the boy who was behind Charles Franklin at the time the latter received the injury from which he died. As heretofore stated in this opinion, Marcelle was 7 years old at the time of the accident. He was not quite 8 years of age at the time of the trial. Apparently he had testified at an inquest held over the body of Charles Franklin a day or two after the latter died. He was sworn and permitted to testify at the trial of this action. In answer to questions he stated that the accident in which his brother, Charles Franklin, was killed happened at about 5 o'clock in the afternoon; that he and his two brothers were going to the Balance Rock Service Station to get a nickel's worth of candy; that Charles had the nickel; that they were running on the dirt shoulder along the west side of the road; that Clarence was in the lead, then Charles, and then the witness; that the witness was behind Charles about 8 or 9 feet and Charles was about the same distance behind Clarence; that when Charles was hurt he had not reached the Martin Lane; that the witness had just completed the third grade at school; that he did not remember Mr. Gease, the county attorney, asking him any questions at the inquest. At this point in the testimony counsel for the defendants sought to refresh the recollection of the witness by reading, certain questions and answers, among which were the following:

"Q. How old are you? A. Eight. I mean, seven.

"Q. Will you tell what happened up there? Tell these men here (indicating Justice Hammond and the Coroner's Jury.) A. Well, we was coming up the road—with Clarence and Charley to the service station to spend a nickel for candy, and when we were going up, Clarence

said to me, he said, 'Watch out,' and Charley happened to run around and he ran smack into the car and he was hit, and I ran down the road to tell daddy.

"Q. Just before he was hit, who was in front? A. Well, Clarence was in front, and Charley was in the middle and I was last. Charley ran out between us and started to run to get in front.

"Q. Were you running on the pavement? A. Me and Clarence was off about 2 feet, and Charley ran around, and ran around on the pavement, and he hit right into the car. It just happened that quick."

Counsel for plaintiff objected to the reading of the foregoing questions and answers for the purpose of refreshing the recollection of the witness. The trial court sustained the objection, saying:

"I have grave doubts as to the propriety. A child of this age, and this child in particular, seems to be sort of at sea, and most any suggestion might come to his mind, and his recollection might not be of the facts themselves, but of that which was suggested to him. I am inclined to think that he has covered this part; so when he says he can't remember, doesn't recognize the face of the men it is alleged here who asked him questions, and so forth, I know how easily a suggestion may take the place of a fact in the mind so young as this, and I doubt that a second grade child could really be refreshed by reading what counsel has indicated he desires to present to the child."

The defendants excepted to the refusal of the court to permit them to refresh the recollection of the witness Marcelle Woodward in the manner indicated and also to the comment made by the court in its refusal to permit the witness' recollection to be so refreshed. Errors are assigned because of such ruling and comment. After the court made the ruling just indicated, Marcelle Woodward was further examined by defendants and testified that he did not hear his brother Charley say anything as they were running up the road; that he did hear Clarence say, "Watch out, Charley"; that he and his two brothers were 3 or 4 feet off the pavement on the west shoulder when they met the automobile driven by Brown.

The rule is well settled in this and other jurisdictions that the extent to which counsel may go in an effort to refresh the recollection of a witness is largely within the discretion of the trial court. *Sagers* v. *Internat'l Smelt. Co.*, 50 Utah 423, 168 P. 105; 5 Jones' Comm. on Evid. (2d Ed.) §§ 2378, 2379, and 2382, pages 4671, 4673, and 4682; ■ 11 Encyc. of Evid. 111-114; 70 C. J. 578, 581. An examination of the foregoing texts and the cases cited in support thereof convinces us that the court below did not abuse its discretion in the particulars urged. Nor did the fact that the court states its reason for the ruling complained of result in any prejudice to the defendants.

Appellants claim that the court below was in error ■ in giving its instruction No. 12, which reads as follows:

"You are instructed that in determining whether the infant, Charles Franklin Woodward, was guilty of contributory negligence, you are to consider whether he was exercising that degree of care and caution which a reasonably prudent person of his age, general development, and maturity should exercise under like circumstances. It is the duty of children to exercise that degree of care to avoid injuries, which children of the same age are accustomed to exercise under like circumstances and the maturity and capacity of the infant, his ability to understand and appreciate the danger, and his familiarity with the surroundings in the particular case, are all matters to be taken into consideration in determining this question."

We find no error in the giving of that instruction. One of the defenses interposed by the defendants was that the child, Charles Franklin Woodward, was negligent and that his negligence contributed to the injury which resulted in his death. It was proper that the jury should be instructed as to the nature and degree of care that the law imposed upon him. *Christensen* v. *Oregon Short Line R. Co.*, 29 Utah 192, 80 P. 746; *Gesas* v. *Oregon Short Line R. Co.*, 33 Utah 156, 93 P. 274, 13 L. R. A. (N. S.) 1074; *Herald* v. *Smith*, 56 Utah 304, 190 P. 932.

Nor are defendants entitled to prevail in their attack upon instruction No. 17. That instruction reads as follows:

"You are instructed that it is undisputed in this case that the defendant Brown in driving along and upon the highway at the time and place in question observed the deceased Charles Franklin Woodward, and his two brothers proceeding along and upon the shoulder of the highway, and that he knew at said time that the three were children and that he intended to pass in close proximity to them; and you are instructed that the degree of care to be exercised by the driver of an automobile is greater when the safety of children is concerned, and when such facts are known to the operator of the car; it is for you to determine whether or not Mr. Brown exercised that degree of care and caution at the time and place in question as would be exercised by an ordinarily prudent person under the same circumstances."

It is elementary that the existence or absence of negligence in a particular case must depend upon the circumstances peculiar to it and which surround the parties at the time of the occurrence on which the controversy is based. Acts which may be prudent under one set of circumstances may be deemed negligent under different circumstances. Appellants do not contend the law to be otherwise. Their position is that plaintiff was not entitled to instruction No. 17 because he did not allege that there were children on the shoulder of the road on the occasion in question. It is alleged in the complaint that the child who was killed was on the shoulder of the highway and that the highway where the grievances occurred was extensively used by pedestrians for travel. Such allegations, coupled with the conclusive proof that Charles Franklin and his two brothers were there just before the accident and that such fact was known to the defendant Brown, entitled plaintiff to an instruction as to the law applicable to that state of facts. Having alleged the facts upon which he relied for recovery, it is not necessary for plaintiff to allege the degree of care that the defendants were required to exercise. It is a matter of common knowl-

edge that children are prone to be less mindful of danger than are persons of mature years. For that reason, a greater degree of care is required of a person who drives an automobile in close proximity to children than is required in driving in close proximity to mature persons. *Herald* v. *Smith*, supra; *Green* v. *Higbee*, 66 Utah 539, 244 P. 906; Blashfield's Cyc. of Automobile Law and Practice (Perm. Ed.) Vol. 2, § 1492, p. 519.

Defendants objected to the whole of instruction No. 14 and to various portions thereof. Error is assigned because of that instruction. It reads as follows:

"You are instructed that the laws of this state provide that the driver of an automobile shall not drive upon a public highway in excess of 20 miles per hour upon approaching within 50 feet and in traversing an intersection of highways where the driver's view in either direction along any intersecting highways within a distance of 200 feet is obstructed, and if you believe from the evidence that the view of the defendant Brown was obstructed within a distance of 200 feet while approaching said intersection aforesaid, then it was his duty to drive on said highway at no greater speed than 20 miles per hour, and if you find under the circumstances stated that he did drive at a greater speed than 20 miles per hour, then he was guilty of negligence, and if such negligence was a direct and proximate cause of the injuries and death of the said Charles Franklin Woodward, without negligence on his part contributing thereto, then your verdict should be in favor of the plaintiff and against the defendants."

It will be noted that by the instruction just quoted the trial court submitted to the jury the question of whether or not the defendant Brown was negligent at the time and place in question on account of his failure to comply with certain provisions of our law relating to the speed at which an automobile may be driven at an intersection of highways. At the time of the accident, there was in effect in this state a statute regulating the use of highways, which statute contained, among others, these provisions:

"No person shall drive a vehicle upon a highway at a speed in excess of that indicated below for the particular district or location:

* * * Twenty miles per hour: * * * Upon approaching within 50 feet and in traversing an intersection of highways where the driver's view in either direction along any intersecting highways within a distance of 200 feet is obstructed, except that when traveling upon a through street or at traffic controlled intersections the district speed shall apply." R. S. Utah 1933, 57-7-16.

The language of the statute just quoted is so clear that its meaning cannot be mistaken. In the absence of any local or district speed limit to the contrary, it was the duty of defendant Brown, if his view was obstructed for a distance of 200 feet westerly along the Martin road, to travel at a rate of speed not to exceed 20 miles per hour from a point 50 feet north of the north side of where the Martin road enters the road on which he was driving and to maintain a speed of not to exceed such rate until he reached the south side of the Martin road. A failure to perform that duty, if it were a duty, constituted negligence per se. The only reference made in the complaint to intersecting highways was that the accident occurred "at and near the place on said highway where the road from the town of Martin in said Carbon county aforesaid intersects said highway." The allegation "that on said highway at and near said place aforesaid, is a curve and that the view of a driver is obstructed by reason of buildings, poles and fences" obviously refers to obstructions of a view of the highway upon which defendant Brown was traveling. There is no allegation in the complaint to the effect that as defendant Brown approached within 50 feet of the Martin road his view along such road was obstructed for a distance of 200 feet or at all. Nor is there any allegation in the complaint as to whether or not the place where the Martin road intersects the highway on which defendant Brown was driving was "traffic controlled," or whether any "district speed" was fixed at that place. Looking to the evidence, there is no proof whatever touching the question of whether or not any "district speed" was fixed at or near the place of the accident. The evidence is extremely meager as to whether the view of Mr.

Brown along the Martin highway was or was not obstructed as he approached it from the north. The Martin road enters U. S. Highway No. 50 from the west. It does not extend to the east of U. S. Highway No. 50. There is evidence that to the south of the Martin road and along U. S. Highway No. 50 there are a number of houses. Obviously, such houses would not have obstructed Mr. Brown's view of the Martin road because he approached that road from the north. The evidence does show that there was a ditch bank parallel with and extending along the west side of the highway on which defendant Brown was traveling. Just north of the Martin road the ditch bank was by one of the witnesses estimated as being from 14 to 20 inches high; that is, above the road-bed of U. S. Highway No. 50. Along the ditch bank were some posts to which wire was attached. Some weeds and vines were growing along the ditch bank. No one testified as to the height of the wire fence, the weeds, or the vines. There is also evidence that the Martin road was upgrade going westward from U. S. Highway No. 50. The degree of such upgrade is not shown. Plaintiff offered in evidence three photographs marked exhibits B, C, and D. The record is silent as to where the camera was held when the photographs were taken. It may have been near or a considerable distance above the ground. Exhibit B was apparently taken from a point a short distance to the northeast of where the Martin road comes into U. S. Highway No. 50. It shows a house on the corner to the south of the Martin road and to the west of U. S. Highway No. 50. Obviously, that house could not obstruct the view of the Martin road of one coming from the north along U. S. Highway No. 50. That photograph shows only a few feet of the west side of U. S. Highway No. 50 immediately to the north of the Martin road. It does show the bank along the west side of U. S. Highway No. 50 and the fence and vegetation along the bank. The vegetation does not appear to be more than a foot or two high. From where the camera was placed (wherever that was) while that photograph was taken, the lower window

sill on the first floor of a house located to the south of the Martin road can readily be seen. Exhibit C was apparently taken from a point near the south side of the Martin road where it enters U. S. Highway No. 50. The camera was apparently facing the northwest. It shows the embankment and vegetation shown by Exhibit B. So far as appears from that photograph, there was no building located to the north of the Martin road and to the west of U. S. Highway No. 50 which would obstruct the view of the Martin road of one coming from the north along U. S. Highway No. 50. There are, however, two buildings shown in the background of that photograph. There is no evidence as to the distance such buildings are north of the Martin road or west of U. S. Highway No. 50. That both of such buildings are a substantial distance from the place where the Martin road comes into U. S. Highway No. 50 is apparent. There is nothing in the record to justify a finding that either of those buildings would obstruct the view along the Martin road (within a distance of 200 feet) from where it enters U. S. Highway No. 50 (of one coming from the north on U. S. Highway No. 50). The photograph which is marked Exhibit C purports to show the condition that existed on the south side of the Martin road. Therefore that photograph does not aid in determining whether or not one coming from the north on U. S. Highway No. 50 would have his view of the Martin road obstructed. It was stipulated by counsel that as defendant Brown sat in the seat of the automobile he was driving on the day in question the top of his head was more than 5 feet above the roadbed on which he was traveling.

The foregoing is, in substance, all of the evidence offered touching the question of whether or not the view of the Martin road was obstructed as one approached within 50 feet of it from the north while traveling on U. S. Highway No. 50. It would have been a simple matter to have ascertained that fact, but no one testified with respect thereto. The photographs bearing upon that question fall far short of supporting a finding that the view along the

Martin road was obstructed for a distance of 200 feet as one approached from the north within 50 feet thereof. Thus, the complaint is fatally defective in its allegations when viewed as an attempt to bring the defendant Brown within the provisions of R. S. Utah 1933, 57-7-16. The evidence also fails to show sufficient facts to bring defendant Brown within its provisions. It is the settled law in this jurisdiction that negligence must be both charged and proved. A failure of either is fatal. Here there was a failure of both. It is equally well established that it is prejudicial error to permit the jury to find a verdict based upon either negligence not charged or negligence charged but not shown. *Davis* v. *Midvale City,* 56 Utah 1, 189 P. 74; *Verdi* v. *Helper State Bank,* 57 Utah 502, 196 P. 225, 15 A. L. R. 641; *Smith* v. *San Pedro, L. A. & S. L. R. Co.,* 35 Utah 390, 100 P. 673; *Macky* v. *Bingham New Haven Copper & Gold Mining Co.,* 54 Utah 171, 180 P. 416; *Martindale* v. *Oregon Short Line R. Co.,* 48 Utah 464, 160 P. 275; *Kendall* v. *Fordham,* 79 Utah 256, 9 P. (2d) 183; *Industrial Commission* v. *Wasatch Grading Co.,* 80 Utah 223, 14 P. (2d) 988. Moreover, it may be that even if the view of the Martin road were obstructed the statutory provisions with respect to the rate of speed that an automobile may be driven at intersecting highways has no application to the facts shown by the evidence in this case. The accident occurred south of the south side of the Martin road. All of the witnesses are agreed as to that. One witness placed such distance as about 5 or 6 feet; another at about 18 feet. The evidence is all to the effect that the Woodward boys could be seen and were seen by defendant Brown at least 150 feet before he met them. The briefs of counsel do not aid us with respect to the question of whether the statute is or is not applicable to such a state of facts even if pleaded. It will be soon enough to decide that question if and when the statute is pleaded. We do not now decide that question.

Instruction No. 14 permitted the jury to find a verdict for the plaintiff on the theory that the complaint charged, and

the evidence tended to show, that the defendant Brown had failed to comply with provisions of R. S. Utah 1933, 57-7-16. Upon this record it was error to give that instruction. Such error requires a reversal of the judgment.

For the reasons stated, the judgment of the lower court is reversed. This cause is remanded to the district court of Carbon county with directions to grant a new trial. Costs to appellants.

FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.

WOLFE, Justice.

I concur. I agree that the allegations of the complaint do not draw into the vortex of controversy that part of section 57-7-16, R. S. Utah 1933, relating to speeds approaching intersections. This section specifies a speed not greater than 20 miles an hour during the last 50 feet before reaching the intersection where the approaching driver's view of the intersecting highway in either direction is obstructed by objects along that intersecting highway within a distance of 200 feet from the crossing. Certainly, the complaint did not found its cause of action on any duty of the driver dictated by the intersection. The cause of action was founded on his operating the car at a speed which prevented him from keeping control while turning a curve with his view obstructed along the curve. But I am doubtful whether, under the situation of this case, any allegations assigning a failure to drive at 20 miles or less within the last 50 feet from the intersection as negligence would have been material even though it was proved that there were obstructions to his view within the 200-foot distance from each of his flanks along the intersecting highway.

This law appears to be for the protection of traffic at intersections, particularly to require reduced speeds because of obsecured vision up crossroads in order to prevent collis-

sions at those intersections. What relation has it to pedestrians walking on the same highway toward the driver, who have not reached or who have passed the intersection? Was it meant to dictate a speed in order to protect them? The prevailing opinion saves the question. I do, too. The appellants have devoted only half a page to the matter in which they simply state that the law had no application to this case and was only intended to regulate traffic approaching and crossing intersections. They have not given us any aid in a discussion of the principles or any citations of cases as to whether a violation of a statute meant to prevent a certain type of accident or to protect a certain class is negligence per se as to those not in the class or as to some one injured in a manner totally unrelated to any situation which such statute was designed to take care of. While I shall not express any opinion on it, I think that in the retrial this matter should be taken into consideration. If a car clipped a stone from the road and catapulted it into a man working on a ditch by the side of the road when within 75 feet of the crossing while going 50 miles an hour, this statute certainly could not be availed of. If, while he was within 50 feet of the crossing going 50 miles an hour and catapulted a stone into the man, could it be charged that not only was he going at too rapid a speed in view of the stone in the road, but that he should have been going no more than 20 miles an hour, in which case the wheel of his car would have hardly more than pushed the stone aside? In short, is not the question in this case whether, with children trudging or running along the shoulder of the road, the individual defendant was not going at too great a speed, and whether, under those circumstances, he exercised that care and caution which an ordinarily prudent driver would have exercised under those circumstances, just as if there never had been an intersection in the vicinity? In the illustration of the clipped stone above suggested, suppose it could be proved that there was no obstruction to the view on the driver's flanks up the intersecting highway. Then, there could not be assigned the negligence

that he was going more than 20 miles an hour in violation of the law. But if there were obstructions, then is the merely going at a greater speed than 20 miles an hour in itself assignable as the proximate cause of filliping the stone? Would a speed of 21 miles an hour state a case of negligence per se? It appears odd that these features which only relate to required care to prevent a crossroads collision should be made the basis for negligence in the filliping of a stone. Another variation of the stone accident is suggested: Suppose it were admitted that the filliped stone within the 50-foot distance could not have been so ejected by the sudden clip of the wheel if the car had been going even as low as 30 miles an hour. Suppose, too, there are the obstructions within the statutory 200 feet along the intersecting highway. Certainly, the negligence, if any, of not going 20 miles an hour or less could not then be said to be the proximate cause of the catapulting of the stone, for even 30 miles would not have done it.

I am wondering if the same may not be true in this case. Could it be said that the failure to go 20 miles an hour or less within the 50 feet was the proximate cause of this accident? Was it not, from plaintiff's point of view, rather too great a speed under the circumstances, regardless of the speed limit imposed for intersection purposes? Twenty-one miles an hour might not have been negligent as dictated by the position of the children, and yet 15 miles might have been. That would be for the jury to determine.

District speeds designated to protect all of the general public may come under a different category. Any injury which might reasonably have been prevented by observance of the legal speed may be said to be proximately caused by the excess speed. My doubt comes in the case where the ordinance was designed for the benefit of a certain class—travelers whose paths would cross in the intersection.

I am familiar with the doctrine laid down in *Collins* v. *Liddle*, 67 Utah 242, 247 P. 476, and *Wilcox* v. *Wunderlich*, 73 Utah 1, 272 P. 207, in which it was held that a person

under 16 driving a car was negligence per se and that if an accident happened such fact alone of the person being under 16 could be taken into consideration by the jury as an element in determining the proximate cause of the accident. But in such case the prohibition against a youth under 16 driving was for the benefit of all the public and not as in the case of this law, to protect that part of the public coming along crossroads. If I pass a car to the right instead of passing to the left as the law requires, and in so doing go off the paved portion onto a rough shoulder and bounce a passenger from the seat injuring him, can it be said that the violation of the law which requires me to pass on the left was a proximate cause of the accident? Such law was designed to prevent collisions and not to keep people on the smooth part of the highway in order that they would not shuffle the occupants of the car off the seats. Had such car not been there and for some reason the driver had driven onto the rough shoulder, a violation of the law could not be assigned as negligence. The negligence would have been driving off the paved portion in a negligent manner. Thus, it would seem to be if the motive or reason for doing so was to pass a car on the right. Is it not just as true here that the negligence was too great a speed under the circumstances, entirely independent of any law which required a reduction of speed for the sole purpose of preventing intersection collisions, and that such violation of the "20 miles an hour" law is not material?

I cannot agree with the opinion that instruction No. 17 was proper. The plaintiff, in as plain language as could be used, founded his cause of action on the theory that defendant Brown, going at an excessive rate of speed, could not control his car and "then and there carelessly and negligently drove and operated said automobile off the paved portion of the highway and onto the shoulder thereof * * * and that said Brown by reason of his aforesaid negligence caused said automobile to strike upon and against the said Charles Franklin Woodward," etc. Defendants met this plain state-

ment of how the accident happened by a theory that the deceased boy ran on the pavement and into the car and was hurtled around, thrown down, and thus met his death. Their theory of defense was that the deceased was thus guilty of contributory negligence, or, better still for them, that his act of running into the car alone caused his death, defendant Brown being free from negligence. After this evidence of defendant is in, the court gives instruction No. 17 on the theory that plaintiff had founded his cause of action on defendant's passing the children at too great a speed. It is almost a truism that plaintiff must recover on the cause of action he sets out. He cannot transmute defendant's defense into a cause of action for himself and have the court instruct upon it. If in this case plaintiff had set out as a second count the theory that Brown had not used a rate of speed in passing the children that a prudent person would have used and knowing that children were there and that children of that age are prone to dart out into the street, he nevertheless went at such speed as would give him no chance to avoid the accident, or at least mitigate its consequences, plaintiff would have stated a good cause of action had the boy been free from contributory negligence, according to the test laid down in the court's instruction No. 12. In such case instruction No. 17 would have been in order. And ordinarily, by the same token, instruction No. 12 in dealing with contributory negligence of the deceased boy was not material under either plaintiff's or defendant's theory. Had the plaintiff included a count of negligence to the effect that Brown was passing the children at too great a speed and that the deceased, acting as any boy of his age, general development, and maturity could be expected to act, had run out into the road and because of the improper speed Brown was unprepared for the eventuality which he, if prudently driving, should have been prepared for, then the plea by defendant of contributory negligence would have put in issue the matter of whether the deceased did act in such fashion as a boy of his age and development would be ex-

pected to act and instruction No. 12 would have been material. But where the allegation is that defendant Brown ran off on the shoulder where the lad had the right to be and ran into him, there was no place for a plea of contributory negligence to raise that issue. Contributory negligence was pleadable where such a situation was alleged as would make such contributory negligence a defense to the negligence of the defendant, but where the plaintiff places his case on a theory which, if true, leaves the defendant no such defense, then a plea of contributory negligence which fits into a situation different from that alleged by the plaintiff need not be interposed. It is not incumbent on the defendant to anticipate that plaintiff will transmute his theory during the trial into such as will make a plea and proof of contributory negligence material. The fact that defendant did plead contributory negligence lends some color to the idea that he must have believed that plaintiff himself might change his theory after the facts came out. But because it was so pleaded, I do not think the defendant can complain very ardently of the court giving instruction No. 12, which defines the degree of care a boy must use.

As to the failure of the court to permit defendant to refresh the memory of the eight year old Marcelle Woodward, I agree that such matters are largely within the discretion of the court, but if this refusal was not an abuse of discretion, it was certainly on the very edge of it. This boy, at the inquest, when he was probably more natural and spontaneous, testified, according to the testimony offered to refresh his recollection, that Charlie, the deceased, ran out from between him and Clarence to get to the front and "ran smack into the car." This was before Justice Hammond and the coroner's jury while he was being questioned by Mr. Gease. At the trial he testified with accuracy as to the relative positions of the two brothers, Clarence and Charles, in reference to him on the shoulder of the road, where they were going and for what purpose, and with accuracy as to the distance the file of boys was from the pavement, but he

cannot remember telling his story at the inquest, nor Mr. Gease (who was pointed out to him in the courtroom) asking him any questions, nor his answering any questions at the inquest.

At the inquest he apparently testified to what had happened and it was contrary to plaintiff's allegations and plaintiff's theory of the case. At the trial he could not remember how the accident had happened nor seeing Brown's automobile. All that part of his former story was, according to his testimony, a complete blank. We can agree that much tact and kindness must be employed in questioning such a young lad. That seems to have been used. We can further agree that the court, because of the lad's age and the court surroundings and his liability to become confused, should not permit him to be pressed very hard for answers when it is apparent or likely that he is confused or that the incident in regard to which he is testifying has become blurred in his mind. But where it is apparent that his supposed lapse of memory is really not a lapse, but because of the realization in which some one has apparently schooled him, that he must not remember such damaging details, the court should permit his mind to be refreshed. I fully recognize the principle that this being the defendant's witness they could not impeach him nor ordinarily get in evidence statements made by him at another time under the guise of refreshing memory. They take him as one takes a wife or husband, for better or for worse. But there is also such a thing as trying a case openly, without hidden allegations in pleadings, without strategies, and with every endeavor of both parties to bring out the true facts before the jury. If the defendant Brown with three young lads so close to the pavement, passed them at an unreasonable speed and thus caused the death of one of them, even though such one did act with boyish precipitancy and thoughtlessness, because his speed was one which would not permit him to avoid eventualities, the father should recover. But the case as it was should be alleged, the material evidence to permit the

jury to come to a correct solution should be available and given to it, and the instructions in turn should be measured by the issues and the testimony. This trial did not meet these requirements in the respects I have indicated above, and for that reason I concur in the decision of reversal.