Jerry Lee CASIDA, Plaintiff and Appellant,

v.

Gary DELAND, Director of the Utah State Prison, Defendant and Appellee.

No. 930521–CA.

Court of Appeals of Utah.

Dec. 23, 1993.

Kenneth R. Brown (Argued), Salt Lake City, for plaintiff and appellant.

Jan Graham, State Atty. Gen., Nancy L. Kemp (Argued), Asst. Atty. Gen., Salt Lake City, for defendant and appellee.

## OPINION

Before RUSSON, Associate P.J., and BENCH and BILLINGS, JJ.

RUSSON, Associate Presiding Judge:

Jerry Lee Casida appeals the district court's denial of his petition for an extraordinary writ seeking habeas corpus relief under Utah Rule of Civil Procedure 65B. We affirm.

## FACTS

Following a jury trial in November 1987, Jerry Lee Casida was convicted of rape, forcible sodomy, forcible sexual abuse and aggravated burglary. The trial court subsequently sentenced him to five years to life imprisonment in the Utah State Prison.

Approximately one year into his sentence, Casida learned that another inmate at the Utah State Prison, Blaine Hoag Nelson, was claiming responsibility for the rape for which Casida was convicted. Nelson is a convicted rapist who was then serving a sentence of thirty-five years to life. Seeking habeas corpus relief, Casida filed a petition for an extraordinary writ, in which he asserted that he was entitled to a new trial on the ground that Nelson's confession was newly discovered evidence.

The district court held an evidentiary hearing at which Nelson explained why he was claiming responsibility for the rape in question and testified in some detail concerning the facts of that rape. Nelson stated that in early 1989, he received a letter from Casida's sister, Sharon Aaron, asking if he was responsible for the crimes for which her brother was convicted. He responded to this letter with a request for details, and received a second letter from Aaron that contained details of the rape of which Casida was convicted, after which Nelson began to claim responsibility for the rape. However, at the evidentiary hearing, Nelson was unable to produce these letters, asserting that they had disappeared from his prison cell.

Concerning the events on the night of the rape at issue, Nelson testified that he entered the victim's apartment through the front door, and, after an unsuccessful search

for money downstairs, proceeded upstairs, where he found the victim asleep in her room with her young daughter. He then went to the daughter's room, removed one or two stuffed animals from the bed in preparation for raping the victim, returned to the victim's room, awoke her, and led her back to the daughter's room. Once in the room, Nelson removed the victim's nightshirt, which he described as white with a small pattern throughout, and panties, which he described as light-colored and plain cotton. He then unzipped his pants, performed oral sex on the victim, left a hickey on her right breast, and then had sexual intercourse with her. Nelson claimed that the victim never protested to these acts. Additionally, Nelson testified that at the time of the rape, he was six feet one inch tall, weighed about 175 pounds, wore a long-sleeved sweatshirt, and wore his hair over his forehead and ears.

At the same hearing, Gary Deland presented the transcript from Casida's original trial and other evidence and testimony that contradicted Nelson's testimony. A police detective testified that the rapist entered the victim's apartment through a window, leaving a shoe print on the wall beneath the window. Further, at the evidentiary hearing, the victim testified that twenty-five dollars was stolen from her purse downstairs, and that her daughter's bed, where the rape occurred, had been covered with twenty stuffed animals and toys. As to the sexual assault, the victim testified that she asked the rapist to stop and that the assault occurred in a different order and manner than described by Nelson: hickey on her left breast, digital penetration, oral sex and sexual intercourse. Further, she testified she had been wearing black lace panties with white flowers and a nightshirt with a single large decal on the front. Additionally, the victim testified the rapist wore a sweatshirt with cut-off sleeves, button-fly jeans, and had short, slicked-back hair and a mustache. She described her assailant as having a roll of fat around his middle, and identified Casida as the rapist, saying that she had never seen Nelson before.

In addition to this testimony, the trial transcript, which was part of the record in the evidentiary hearing, contained testimony from Casida's wife that Casida weighed 280 pounds and was five feet ten inches tall. Further, Deland presented expert testimony that cat hair from the victim's cat, found on the blanket from the bed where the rape occurred, matched cat hair found on Casida's clothes. Based on the testimony and other evidence, the district court, finding that Nelson's reliability and credibility were doubtful, denied Casida's petition on the ground that Nelson's testimony did not create a substantial likelihood of a different verdict.

Casida appeals, raising the following issues: (1) Was it proper for the district court to make a finding of fact that Nelson's reliability and credibility were doubtful, and if so, was that finding clearly erroneous?; (2) Did the district court apply the proper legal standard to his petition for extraordinary writ?; and (3) Did sufficient foundation exist to allow expert testimony regarding the cat hair?

## STANDARD OF REVIEW

 On review of a denial of a petition for an extraordinary writ, the standard of review depends upon the issues presented on appeal. If the petition presents only questions of law, we grant the trial court's conclusions no deference, reviewing them for correctness. *Stewart v. State By and Through Deland*, 830 P.2d 306, 309 (Utah App.1992). If, however, there are questions of fact, "we defer to the trial court's findings and will disturb those findings only if they are clearly erroneous." *Id.* Moreover, we view the record in the light most favorable to the findings and judgment, and if there is a reasonable basis to support the trial court's refusal to grant habeas corpus relief, we will affirm the trial court. *Bundy v. Deland*, 763 P.2d 803, 805 (Utah 1988); *accord Baldwin v. State*, 842 P.2d 927, 928 (Utah App.1992).

## WITNESS CREDIBILITY

Casida argues that it is not within the district court's prerogative to make findings of fact at a hearing on an extraordinary writ seeking habeas corpus relief, but rather only to hear evidence and determine whether it would be unconscionable not to review the conviction based on the new evidence. Alter-

natively, Casida argues that if the district court may make findings of fact, the district court's finding as to Nelson's reliability and credibility was clearly erroneous. Deland responds that Casida has not shown that any specific finding of fact is unsupported by the record, and that this is merely an attempt by Casida to challenge the standard under which extraordinary writs are reviewed.

■ As to Casida's first argument, the Utah Supreme Court has stated that when habeas corpus relief is sought, it is "the prerogative. of the trial court to judge the credibility of the witnesses and to determine the facts." *Hanks v. Turner*, 29 Utah 2d 300, 508 P.2d 815, 816 (Utah 1973). Further, in such a situation a judge is "not obliged to believe the self-serving testimony of the petitioner." *Id.* While the judge "should not arbitrarily reject competent, credible, uncontradicted testimony, nevertheless he is not compelled to believe evidence where there is anything about it which would reasonably justify refusal to accept it as the facts, and this includes the self-interest of the witness." *Strong v. Turner*, 22 Utah 2d 294, 452 P.2d 323, 324 (Utah 1969) (footnote omitted). Moreover, it is a fallacy to assert that one's own evidence at a hearing seeking habeas corpus relief must be taken as fact. *Id.* Thus, it is clearly within the purview of the district court to assess witness credibility and make findings relative thereto.

■ Because the district court did not err in making findings of fact in this case, we next review the district court's finding as to Nelson's reliability and credibility to determine whether it is clearly erroneous. While Nelson's testimony contained several specific details that correlated with the evidence in the original trial, it also directly contradicted some of the facts in that trial as well as testimony received at the habeas corpus hearing. For example, Nelson denied taking any money from the apartment, while the victim testified that twenty-five dollars was stolen from her purse. Further, Nelson did not meet the victim's physical description of her assailant. She testified that her assailant was overweight, had a roll of fat around his middle, and had short slick-backed hair and a slight mustache. At the time of the

rape, Nelson did not match this description, being six feet one inch tall, weighing about 175 pounds and wearing his hair over his forehead and ears. Also, the victim testified that the rapist wore a sweatshirt with cut-off sleeves and button-fly Levis. Nelson testified that he was wearing a long-sleeved shirt and zipper-fly jeans.

There was also a discrepancy regarding how the rapist entered the victim's apartment. Nelson testified he had come in the front door, while police detectives testified that the rapist came in through a window, leaving a shoe print on the wall beneath the window. Further, Nelson's testimony as to what the victim was wearing and the order of the various acts of sexual assault differed from the victim's account. Moreover, the victim identified Casida as the rapist and further testified that she had never seen Nelson.

Based on the foregoing, we cannot say that the district court erred in finding that Nelson's reliability and credibility were doubtful. Accordingly, Casida's first challenge fails.

### LEGAL STANDARD

Casida asserts that the district court applied an improper legal standard to his petition for an extraordinary writ for habeas corpus relief. Deland responds that the district court correctly based its rejection of Casida's petition on whether there was a substantial likelihood that a different verdict would have resulted at trial.

■ This court has plainly articulated the standard a district court must apply in reviewing a petition for an extraordinary writ that collaterally attacks a judgment:

> [T]he nature of the alleged circumstance must be such that it would be unconscionable not to reexamine the conviction. Such circumstance exists when there is a substantial likelihood that had certain evidence been available at the time of trial, a different verdict would have resulted.

*Stewart v. State By and Through Deland,* 830 P.2d 306, 309 (Utah App.1992). Thus, the general standard, which is one of unconscionability, is met when there is a "substan-

tial likelihood" of a different verdict had the evidence been available at trial.

■ In the case at bar, the district court found that there was not a substantial likelihood of a different verdict, even given Nelson's testimony. However, Casida argues that the district court should not be limited by the "substantial likelihood" standard in evaluating the unconscionability of not reexamining the conviction. Deland responds that if the "substantial likelihood" standard is not met, that alone is enough to bar a new trial.

Because the facts in *Stewart* are similar to those in the case before us, we review them to assist us in determining whether the "substantial likelihood" standard alone is sufficient to bar a new trial. In *Stewart*, the court was concerned with newly discovered evidence, specifically testimony deliberately withheld at trial by a testifying witness and testimony of a witness who had been unavailable at the trial. *Id.* at 307–08. Thus, the "substantial likelihood" standard clearly applies when newly discovered evidence, specifically testimony, is the ground claimed for relief.

In the case at bar, Casida's sole ground for a new trial is the newly discovered evidence of Nelson's testimony. Casida offers the court no additional evidence beyond that testimony. Thus, as enunciated in *Stewart*, the "substantial likelihood" standard used to determine unconscionability is the proper standard in this case.

## EXPERT TESTIMONY

Finally, Casida argues that there was insufficient foundation to allow expert testimony regarding certain physical evidence, specifically hairs from the victim's cat found on both Casida's sweatshirt and the blanket from the bed where the rape occurred. Deland contends that the district court did not err in allowing expert testimony regarding the cat hair evidence because it took judicial notice of the record made at the original trial.

■ A trial court has considerable discretion over the admission of expert testimony, and we will not disturb its rulings absent a clear abuse of discretion. *Lamb v. Bangart,* 525 P.2d 602, 607–08 (Utah 1974); *Anton v. Thomas,* 806 P.2d 744, 746 (Utah App.1991). An abuse of discretion occurs only when the trial court's ruling is "beyond the limits of reasonability." *State v. Hamilton,* 827 P.2d 232, 239–40 (Utah 1992) (citation omitted); *see also State v. Ramirez,* 817 P.2d 774, 781–82 n. 3 (Utah 1991) (when evidentiary rules vest discretion with trial court, we reverse only if trial court acted unreasonably in exercising discretion).

■ In the case at bar, sufficient foundation to allow expert testimony regarding the cat hair on the blanket and the sweatshirt was properly laid at the original trial, and Casida did not object at that time. Further, the expert testimony presented at the district court's habeas corpus hearing presented nothing that was not already part of the record from the original trial, which record the district court took judicial notice of and made part of the record at the habeas hearing. Additionally, the district court did not use this expert testimony to establish Casida's guilt, but rather to measure the reliability and credibility of Nelson's testimony. Thus, the district court did not abuse its discretion in admitting the testimony. Moreover, Casida has failed to show that the district court's admission of the expert testimony was in any way unreasonable. Accordingly, we do not disturb the district court's judgment.

## CONCLUSION

In conclusion, we hold that: (1) the district court's finding of fact as to Nelson's reliability and credibility was not clearly erroneous, (2) the district court applied the proper legal standard to Casida's petition for an extraordinary writ, and (3) the district court properly allowed expert testimony regarding the cat hair. Accordingly, we affirm the district court's denial of Casida's petition for an extraordinary writ seeking habeas corpus relief.

BENCH and BILLINGS, JJ., concur.