Tammy VITALE, as Guardian Ad Litem
For Angie CHRISTENSEN,
Plaintiff and Appellee,

v.

BELMONT SPRINGS, a limited partnership; Wayne C. Larsen; Scott C. Holmgren, individually; and Does 1 through 30, inclusive, Defendants and Appellants.

No. 950522–CA.

Court of Appeals of Utah.

April 25, 1996.

N. George Daines, Logan, for Appellants.

Herm Olsen, Logan, for Appellee.

Before DAVIS, BILLINGS and GREENWOOD, JJ.

GREENWOOD, Judge:

Belmont Springs, Wayne C. Larsen, and Scott C. Holmgren (collectively Belmont

Springs) appeal a jury verdict in favor of Tammy Vitale, Guardian Ad Litem for Angie Christensen, on the grounds that the trial court submitted an improper instruction to the jury on the standard of care required of Belmont Springs, and erred in rulings regarding testimony by plaintiff's expert. We reverse and remand for a new trial.

## BACKGROUND

On June 14, 1991, Angie Christensen went to the Belmont Springs swimming pool with her mother, sister, and some friends. Angie was injured when she went down the pool slide head-first, striking her head on the bottom of the pool and breaking her neck. Angie was fifteen-years-old at the time of the accident, her birthday being March 28, 1991.

On March 12, 1992, Vitale, as Guardian Ad Litem for Angie, filed a complaint alleging Belmont Springs was liable for Angie's injuries under a negligence theory. At trial, a dispute arose as to the appropriate standard of care which Belmont Springs owed Angie. Belmont Springs argued it owed Angie the same duty of care as to an adult, while Vitale argued that Angie was a child, and therefore entitled to a special standard of care. The trial court agreed with Vitale and instructed the jury accordingly. In closing argument, Vitale's counsel referred to the higher standard of care Belmont Springs owed Angie because she was a child. The jury returned a verdict in favor of Vitale, attributing 60% of the fault to Belmont Springs and 40% to Angie.

Another dispute arose concerning the qualification of plaintiff's expert, Dr. J. Paul Tullis, and the scope of his testimony. Belmont Springs appeals, claiming (1) the trial court improperly instructed the jury on the appropriate standard of care; and (2) the trial court erred in qualifying plaintiff's expert and failing to restrict the scope of his testimony.

## STANDARD OF REVIEW

A trial court's decision regarding jury instructions presents a question of law, which is reviewed for correctness. *Ong Int'l (USA), Inc. v. 11th Ave. Corp.*, 850 P.2d 447,

452 (Utah 1993); *cf. Trujillo v. Jenkins*, 840 P.2d 777, 778 (Utah 1992) (noting that whether landowner owes duty of care to another is question of law).

The determination of whether a witness is qualified as an expert is within the trial court's discretion. *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline*, 909 P.2d 225, 233 (Utah 1995). Therefore, the trial court's qualification of an expert will not be reversed in the "absence of a clear showing of abuse." *State v. Larsen*, 828 P.2d 487, 492 (Utah App.1992) (quoting *Lamb v. Bangart*, 525 P.2d 602, 607–08 (Utah 1974)), *aff'd*, 865 P.2d 1355 (Utah 1993). The determination of whether a proper foundation has been laid for an expert opinion is also within the trial court's discretion and will not be disturbed absent a showing of clear abuse. *Casida v. Deland*, 866 P.2d 599, 603 (Utah App.1993). In reviewing the trial court's application of evidentiary rules, "[a]n abuse of discretion occurs only when the trial court's ruling is 'beyond the limits of reasonability.'" *Id.* (quoting *State v. Hamilton*, 827 P.2d 232, 239–40 (Utah 1992) (citation omitted)).

## ANALYSIS

### Standard of Care

Under Utah law, because Vitale's claim was based solely in negligence, she was required to show: "'(1) a duty of reasonable care owed by the defendant to plaintiff; (2) a breach of that duty; (3) the causation, both actually and proximately, of injury; and (4) the suffering of damages by the plaintiff.'" *Schreiter v. Wasatch Manor, Inc.*, 871 P.2d 570, 573 (Utah App.), *cert. denied*, 879 P.2d 266 (Utah 1994) (quoting *Williams v. Melby*, 699 P.2d 723, 726 (Utah 1985)). It is undisputed that the jury was properly instructed on these elements.

However, at trial, Vitale requested that the trial court submit an additional instruction to the jury regarding the requisite standard of care toward a child. Vitale submitted Model Utah Jury Instruction (MUJI) number 3.7, which describes the degree of caution required when children are involved. Belmont Springs vigorously objected to the submission of this instruction, arguing that because

Angie was over fourteen years of age, she was subject to the same standard of care as an adult. MUJI instruction 3.7 reads as follows:

### AMOUNT OF CAUTION REQUIRED WHEN CHILDREN ARE INVOLVED

A person must exercise greater care for the protection of *young children* than adults. To satisfy this higher standard of care, a person is expected to foresee and guard against the ordinary, impulsive behavior of children.

(Emphasis added). During the course of argument regarding submission of the instruction, the trial court removed the word "young" from the first sentence. The parties dispute whether the word "young" was removed upon the request of Belmont Springs, or because of a misunderstanding between counsel and the trial court. Nevertheless, we do not address this dispute because the propriety of applying a higher standard of care toward a minor [1] over the age of fourteen does not turn upon the inclusion or exclusion of the word "young" in the instruction. Accordingly, we resolve only the question of whether a minor over the age of fourteen is entitled to a special standard of care.

MUJI 3.7 is based, in part, upon the Utah Supreme Court's decision in *Kilpack v. Wignall*, 604 P.2d 462 (Utah 1979). In *Kilpack*, a seven-year-old boy visiting defendant's farm was injured when he attempted to jump from a moving truck onto a hay bale, as he had seen some older children do. *Id.* at 463. A jury returned a verdict for the defendant, and the plaintiff appealed on the grounds that the trial court erred in refusing to grant a judgment notwithstanding the verdict. *Id.* at 462. The Utah Supreme Court reversed, finding the defendant liable as a matter of law. *Id.* at 466. Central to this conclusion was a discussion of the appropriate standard of care toward a child. The court noted the "[d]efendants had the duty of exercising not only reasonable care under the circumstances, but even, as described in the

instructions to the jury, 'greater caution for the protection and safety of a young child than for an adult person.'" *Id.* at 464. This statement was based, in part, upon the court's earlier decision in *Rivas v. Pacific Finance Co.*, 16 Utah 2d 183, 185, 397 P.2d 990, 991–92 (1964), in which the court had noted "'that when a child is known to be in a situation of possible danger, there is a duty to observe extra caution for his safety.'" *Kilpack*, 604 P.2d at 464 (quoting *Rivas v. Pacific Fin. Co.*, 16 Utah 2d 183, 185, 397 P.2d 990, 991–92 (1964)); *see also Woodward v. Spring Canyon Coal Co.*, 90 Utah 578, 587–88, 63 P.2d 267, 271 (1936) (upholding submission of instruction which noted "that the degree of care to be exercised by the driver of an automobile is greater when the safety of children is concerned"); *Herald v. Smith*, 56 Utah 304, 309, 190 P. 932, 934 (1920) (noting "the degree of care required to be exercised will be greater when the safety of children or others of immature judgment is involved").

Neither party disputes that the law imposes a duty of a higher standard of care toward a child than an adult. Rather, the dispute is over whether this higher standard applied to Angie, who had reached her fifteenth birthday some months before the accident. In *Kilpack*, the court held that because the injured party was a seven-year-old child, the defendant was held to the higher standard of care. 604 P.2d at 464–65. In reaching this decision, the court referred to its decision in *Nelson v. Arrowhead Freight Lines*, 99 Utah 129, 104 P.2d 225 (1940). *Kilpack*, 604 P.2d at 464. In *Nelson*, the Utah Supreme Court noted that there was a commonly accepted view regarding the ability of children to be responsible for exercising care and avoiding danger:

"It has been generally recognized that children of tender years are so far undeveloped as to be relieved of the charge of negligence; that during another period in their infancy there is rebuttable presumption against their capacity to understand and avoid danger; and that in the later years of infancy there is a rebuttable pre-

---

1. The Utah Code provides that "[t]he period of minority extends in males and females to the age of eighteen years." Utah Code Ann. § 15–2–1 (1996).

sumption that they are chargeable with the same degree of care as are adults. Ordinarily a child under seven years of age is conclusively presumed not guilty of contributory negligence. Between the ages of seven and fourteen, in the absence of showing to the contrary, an infant is generally assumed not to have the same consciousness of danger and the same judgment in avoiding it as an adult. *Above the age of fourteen, in the absence of a showing to the contrary, an infant is generally charged with having attained that development which imposes upon him the same degree of care as an adult.*

*Kilpack,* 604 P.2d at 466 (quoting *Nelson,* 104 P.2d at 228) (emphasis added). We note that *Nelson* addressed the concept of a child's contributory negligence, rather than a defendant's duty of care toward a child. This is also true of most of the cases cited in the parties' briefs. However, *Kilpack* points out that these are corollary concepts with similar considerations. *Kilpack,* 604 P.2d at 464. We therefore conclude the standard of care required by a defendant to a plaintiff over the age of fourteen is the same as that required for an adult.

This result is consistent with Utah law as interpreted by the Tenth Circuit in *Wright v. Marzo,* 427 F.2d 907 (10th Cir.1970). In *Wright,* the court upheld the trial court's rejection of a jury instruction requiring a greater standard of care for a child than an adult, because the plaintiff was fourteen-years-old and defendant testified plaintiff appeared to him to be an adult, not a child. *Id.* at 911. Accordingly, because Angie was over the age of fourteen at the time of the accident and she did not introduce any evidence of special circumstances, Belmont Springs owed her only the same standard of care as to an adult. Therefore, the submission to the jury of MUJI 3.7, in any form, was error.

■ We next address whether the submission of the improper jury instruction was reversible error. "To require a new trial, we must also conclude the error was prejudicial, i.e., that it 'tend[ed] to mislead the jury to the prejudice of the complaining party or insufficiently or erroneously advise[d] the jury on the law.'" *Summerill v. Shipley,*

890 P.2d 1042, 1045 (Utah App.1995) (quoting *Biswell v. Duncan,* 742 P.2d 80, 88 (Utah App.1987)). In *Summerill,* this court addressed the significance of applying an improper standard of care in a negligence case: "In a negligence case, ... the standard of care defines the scope of duty owed by a defendant to a plaintiff. Accordingly, in all but the clearest cases, the jury's application of a standard less demanding than the law requires would necessarily be prejudicial." *Id.* at 1045. We believe that the converse is equally true—that the jury's application of a standard of care that is *more* demanding. is, in all but the clearest cases, also necessarily prejudicial. This conclusion is further supported by the facts of this case. First, Vitale's counsel made reference to the higher standard of care Belmont Springs owed Angie in his closing argument. *See id.* at 1045–46 & n. 6 (finding prejudicial error where closing argument made inferences supporting application of improper legal standard). Second, after hearing testimony that Angie was an experienced swimmer who had gone down the Belmont Springs slide many times, the jury apportioned 40% of the fault to Angie, even under the higher standard. Significantly, under Utah law, had the jury found Angie more than 50% negligent, she would not have been entitled to any damages. *See* Utah Code Ann. § 78–27–38 (Supp.1995). Therefore, if the submission of the improper standard caused the jury to shift its apportionment of fault by at least 10%, the instruction was determinative of Belmont Springs's liability. Accordingly, we remand for a new trial.

### Expert Witness

■ Belmont Springs also claims the trial court erred in several rulings related to the testimony of Vitale's expert witness, Dr. J. Paul Tullis. Although our disposition regarding the improper submission of the jury instruction is determinative on appeal, we address the following issues in the interest of judicial economy. *See State v. Bell,* 770 P.2d 100, 108 (Utah 1988) (addressing issues likely to recur in new trial in interest of judicial economy and to offer guidance to the trial court); *see also* Utah R.App.P. 30(a) ("If a

new trial is granted, the court may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case.").

Belmont Springs appeals the trial court's rulings regarding the expert testimony of Dr. Tullis on several grounds, two of which we address: First, that Dr. Tullis was improperly qualified as an expert witness on swimming pool slides, and second, that an inadequate foundation was offered for Dr. Tullis's opinion on the ultimate issue of whether the slide was unreasonably dangerous at the time of the accident.

■■■ First, Belmont Springs challenges the trial court's qualification of Dr. Tullis as an expert in the specific area of water slides.[2] In this regard, Dr. Tullis testified his qualifications included the following: (1) his position as a senior research scientist and associate professor of engineering at Utah State University; (2) a bachelors degree and Ph.D. in civil engineering from Utah State University; (3) seventeen years as a professor of civil engineering at Utah State University, specializing in hydraulics and fluid mechanics; (4) extensive research in hydraulic structures; (5) many years of consulting experience; (6) various awards for engineering excellence; and (7) publication of over 300 articles.

Despite these credentials, Belmont Springs challenges the qualification of Dr. Tullis, based upon certain statements made by Dr. Tullis during voir dire. Among others, Dr. Tullis made the following admissions: (1) he had done no studies on swimming pools or slides; (2) he had never examined a similar slide prior to his involvement in this case; (3) he was not aware of any standards for pool

slide construction; (4) he had made no effort to determine whether there were standards for pool construction and the depth of water slides, and was unaware of whether such standards existed; (5) he did not observe activity on other slides in the area, and had not spent any significant time observing swimmers using pool slides.[3]

However, the trial court was also presented with evidence that Dr. Tullis's area of expertise was applicable to water slides. Specifically, Dr. Tullis testified as follows:

Probably the only significant difference [between water slides and chutes and spillways] is [that] with chutes and spillways and canals it's water only that is going down the chute. In this case we have the rigid, or semi-rigid body of a swimmer, we call it a rigid body, moving down a slide on a surface film of water. So there are some differences, but the general principles follow the same basic equations of gravity and momentum and so forth.

He further testified:

If the expert is one who understands the principles, who knows the criteria used to design a safe slide and has the ability to do that and can demonstrate that, then I feel like I am an expert in that area.

Dr. Tullis also testified that he had designed chutes and spillways similar to the Belmont Springs slide, and that he had taken measurements of the slide and made calculations therefrom.

As noted, Dr. Tullis discussed his qualifications at length, and was then subjected to extensive voir dire. Given that there was conflicting testimony and that the trial court was in the best position to evaluate the credi-

---

**2.** There is no apparent dispute over Dr. Tullis's qualifications as a hydraulic engineer. In fact, counsel for Belmont Springs noted that "I don't doubt that you [Dr. Tullis] have good credentials in your particular field."

**3.** At one point, Dr. Tullis also admitted that he did not have expertise in what a human body does when it comes off of a slide. When reviewed in context, the emphasis Belmont Springs places on this statement is misplaced. Dr. Tullis made this statement after he testified that swimmers will naturally relax when coming off the slide. In other words, in making the statement,

Dr. Tullis was admitting that he did not know whether swimmers have a natural tendency to "relax" when they come off a slide. The statement was presumably elicited by Belmont Springs because Dr. Tullis testified that a less rigid (relaxed) body would travel towards the bottom of the pool at a sharper angle than a rigid body, and Belmont Springs would logically dispute the characterization that swimmers have a natural tendency to travel toward the bottom of the pool (making an accident like Angie's more foreseeable).

bility of the witness, the qualification of Dr. Tullis as an expert was not an abuse of discretion. *Butler, Crockett & Walsh Dev. Corp. v. Pinecrest Pipeline Operating Co.,* 909 P.2d 225, 233 (Utah 1995) (noting trial court is accorded discretion "in determining whether a particular witness qualifies as an expert ... because they are 'in the best position to assess the credibility of witnesses and to derive a sense of the proceeding as a whole.'" (citations omitted) (quoting *State v. Pena,* 869 P.2d 932, 936 (Utah 1994)).

■■■ Belmont Springs also contends Dr. Tullis improperly based his opinion upon the ultimate issue—whether the slide at Belmont Springs was unsafe—upon the mere fact that Angie was injured. In this regard, Dr. Tullis testified as follows:

Q. Now, Dr. Tullis, did you perform, yourself, any experiments to verify your conclusions?

A. No.

Q. And why not?

A. Angie did it for me. She broke her neck and proved that it is dangerous, I guess. I was trying to determine why, not prove that it is, because that's an established fact.

. . . .

A. ... I'm here to testify that there is a danger and [Angie is] proof that there's a danger.

Although Vitale responds by correctly noting these statements were not the only testimony

by Dr. Tullis on the ultimate issue, we note that "'the mere happening of the accident to plaintiff is no proof of negligence on the part of either plaintiff or defendant or evidence of same.'" *Williams v. Ogden Union Ry. & Depot,* 119 Utah 529, 545, 230 P.2d 315, 323 (1951). At the new trial counsel for both parties [4] should take care that Dr. Tullis does not make similar statements in front of the jury.

## CONCLUSION

The submission of the instruction to the jury calling for a higher standard of care toward a child was improper, because under *Kilpack* and *Nelson,* Angie is not a child for purposes of determining the duty of care owed by Belmont Springs. Because the submission of this improper standard of care to the jury was prejudicial error, we remand for a new trial. The trial court's admission of Dr. Tullis as an expert has adequate support in the record and was not an abuse of discretion. Dr. Tullis may therefore testify at the new trial.

DAVIS, Associate P.J., and BILLINGS, J., concur.

**4.** Belmont Springs failed to object to Dr. Tullis's testimony at trial. The Utah Supreme Court has held, in the context of denying a challenge to the admission of expert testimony, that "'[t]o preserve a contention of error in the admission of evidence for appeal, a defendant must raise a timely objection in the trial court.'" *Steenblik v. Lichfield,* 906 P.2d 872, 881 (Utah 1995) (quoting *State v. Schreuder,* 726 P.2d 1215, 1222 (Utah 1986)); *see also* Utah R.Evid. 103(a)(1).