## KUCHENMEISTER v. LOS ANGELES & S. L. R. CO.

No. 3139.  Decided April 20, 1918.  (172 Pac. 725.)

1. COMMERCE—INJURY TO SERVANTS—FEDERAL EMPLOYER'S LIABILITY. To recover under the Federal Employers' Liability Act (Act Cong. April 22, 1908, c. 149, 35 Stat. 65 [U. S. Comp. St. 1916, Sections 8657-8665]), both employer and employee must at the time of injury be engaged in interstate commerce. (Page 120.)

2. COURTS—FOLLOWING DECISION OF FEDERAL COURTS. A decision of a federal court as to whether an employee is engaged in interstate commerce, especially if more recent should be followed in prefer-

ence to decision of a state court, since the question involved is one upon which the federal courts have the ultimate right to speak. (Page 122.)

3. COMMERCE—"INTERSTATE COMMERCE." Plaintiff employed in roundhouse and machine shop, injured while engaged in repairing a passenger engine which before the injury had been used exclusively in interstate commerce, was being repaired so as to be again used for the same purpose, and was so used after repair, was engaged in interstate commerce. (Page 122.)

4. MASTER AND SERVANT—INJURY WHILE ENGAGED IN INTERSTATE COMMERCE—EVIDENCE. In action based on Federal Employers' Liability Act, evidence *held* to sustain jury finding that plaintiff injured while repairing defendant's passenger engine, was engaged in interstate commerce. (Page 122.)

5. APPEAL AND ERROR—JURY FINDINGS—CONCLUSIVENESS. Plaintiff having made a prima facie case, and defendant having produced no evidence, the finding of the jury is conclusive on appeal. (Page 123.)

6. MASTER AND SERVANT—"CONTRIBUTORY NEGLIGENCE" DISTINGUISHED FROM "ASSUMPTION OF RISK." It does not necessarily follow from a jury finding that a servant was negligent that he also assumed the risk, since "contributory negligence" does not necessarily arise from intelligent choice as does "assumption of risk." (Page 125.)

7. MASTER AND SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK—QUESTION FOR JURY. In action for injury sustained by plaintiff while engaged in repairing defendant's passenger engine, question of contributory negligence and assumption of risk *held*, under the evidence for the jury. (Page 127.)

8. EVIDENCE—DECLARATIONS OF THIRD PERSON. Declarations of plaintiff's mother, relating to treatment of his eye after injury, not made in plaintiff's presence, were inadmissible. (Page 127.)

9. DAMAGES—EVIDENCE—ADMISSIBILITY. In action for injuries sustained by plaintiff servant, where defendant railroad set up negligence of plaintiff in refusing to follow direction of his physician, evidence respecting acts of plaintiff's mother in treating plaintiff's eye were properly excluded. (Page 127.)

10. WITNESSES—IMPEACHMENT. A witness cannot be impeached as to immaterial statements. (Page 127.)

11. TRIAL—INSTRUCTION NOT SUPPORTED BY EVIDENCE. Although statement in charge authorizing consideration of question whether injury had affected plaintiff's earnings in the past was not supported by pleadings or proof, where jury was instructed that they must be guided by the evidence alone defendant was not prejudiced. (Page 128.)

12. PARENT AND CHILD—RIGHT OF PARENT TO EARNINGS OF CHILD. If plaintiff, a minor, was supporting himself from his own earnings, and his parents were not claiming such earnings, he was entitled, in an action for injuries, to recover for their loss, since by Comp. Laws 1907, sections 1544, 3243, the earnings of a minor do not absolutely belong to his parents. (Page 128.)

Appeal from District Court of Salt Lake County, Third District; *Hon. Wm. H. Bramel*, Judge.

Action by Frank George Kuchenmeister, by his guardian ad litem, against Los Angeles and Salt Lake Railroad Company.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*Dana T. Smith* for appellant.

*Marioneaux, Straup, Stott & Beck* for respondent.

FRICK, C. J.

The plaintiff, a minor past sixteen years of age, by his mother as guardian ad litem, brought this action to recover damages for the loss of his eye, which he alleged he lost by reason of injury sustained through the negligence of the defendant while he was employed in its roundhouse and machine shop at Caliente, Nev., on August 21, 1916. The action is based upon the Federal Employers' Liability Act. Plaintiff, in substance, alleged that at the time of the injury the defendant was engaged in interstate commerce as a common carrier; that on the 21st day of August, 1916, while the plaintiff was engaged in repairing certain parts of defendant's passenger engine No. 3425, which was then being used in interstate commerce, he was injured in his eye through the negligence of the defendant, stating the particular acts of negligence in detail; that by reason of such injury he lost his eye and is permanently injured.

The defendant admitted that it was engaged in both inter-
state and intrastate commerce, but denied the alleged acts of
negligence.  It set up contributory negligence on the part of
the plaintiff, and averred that he had assumed the risk, and
also set forth the affirmative defense that the plaintiff, by his
own negligence in refusing to follow the directions of his phy-
sician, had greatly aggravated the injury, and that the removal
of his eye was made necessary by reason of his own negligence,
etc.   The defendant denied, however, that the plaintiff, at the
time of the injury, was engaged in interstate commerce.

The case was submitted to a jury, which found the con-
trolling issues in favor of the plaintiff.   The jury also found
that at the time of the injury both the plaintiff and the defend-
ant were engaged in interstate commerce.   The jury also
found that the plaintiff was guilty of contributory negligence,
but did not find whether such negligence related to the doing
of the work or to plaintiff's conduct in the treatment of his
eye.

The allegations respecting the two grounds of contributory
negligence were supported by substantial evidence on the
part of the defendant.

The jury found that plaintiff had sustained damages to the
extent of $7,500, but reduced that amount, on account of the
contributory negligence of the plaintiff, in the sum of $2,500,
and thus returned a verdict in his favor in the sum of $5,000
as the damages sustained by him.   Judgment was entered on
the verdict, and the defendant appeals.

Counsel for defendant has argued four assignments of error:
(1) That the evidence "is wholly insufficient to support the
finding that the plaintiff was engaged in interstate commerce
at the time he received his injury," and that for that reason the
court erred in submitting that question to the jury;  (2) that
plaintiff had assumed the risk;  (3) errors to the admission
and exclusion of evidence;  and (4) errors in charging the
jury.

Counsel for defendant earnestly insists that the first assign-
ment should prevail.   As before stated, defendant admitted
that it was engaged in both interstate and intrastate com-

merce, but denied that the plaintiff at the time of the injury was engaged in interstate commerce.

It is not necessary to cite authorities upon the proposition that, in order to recover under the Federal Employers' Liability Act, both the employer and the employee must at the time of the injury be engaged in interstate commerce. Plaintiff's evidence tended to prove that plaintiff lived with his mother and sister at Caliente, Nev.; that defendant's engine No. 3425, which is the engine that was being repaired by plaintiff when he was injured, for a number of years immediately preceding the accident had been used exclusively in hauling interstate passenger trains between Caliente, Nev., and Milford, Utah; that plaintiff had seen it used for that purpose continuously for about three years immediately preceding the time the plaintiff was injured; that when the engine was not out on the road and in use it usually was in defendant's roundhouse at Caliente, Nev.; that a short time before the accident, perhaps a day or so, the engine was left at defendant's roundhouse and machine shop at Caliente, Nev., to be "overhauled"—that is, some repairs were required to be made upon it; that plaintiff had been in the employ of the defendant since June 23, 1916; that for about six weeks prior to the accident he had performed different kinds of work about the roundhouse and machine shop as he was directed from time to time by defendant's foreman who was in charge of the roundhouse and machine shop at Caliente; that on the 21st day of August, 1916, plaintiff was directed to assist another employee to do some repair work on said engine No. 3425; that in making such repairs it was necessary to grind down or reduce in size a certain pin which was a part of said engine, and plaintiff was directed to do that work on an emery wheel that was provided for that purpose by the defendant; that while plaintiff, prior to that time, had, on several occasions, used the emery wheel in question yet he was not aware of or did not realize the danger incident to the grinding of metals on emery wheels which would cause sparks and small particles to fly off from such wheels while grinding such metals; that he was not informed of such danger by defend-

ant's foreman nor by any one else, and that no "goggles" or eye-protectors were furnished by the defendant with which to protect the eyes while grinding as aforesaid; that while he was in the act of grinding down the pin as directed, which was to be used on said engine, a small particle of steel or other hard substance which was thrown off from said emery wheel flew into and penetrated his eye, and caused the same to be sore and inflamed to such an extent that it had to be and was removed from the socket, by reason of which he became and is permanently injured; that he left the roundhouse of the defendant on the day of the accident, and that he did not know how long it took thereafter to complete the repairs on the engine aforesaid; that the next time he saw the engine it was standing dead on the side track at Milford, Utah, and in about three weeks after the accident he saw the engine in use in interstate commerce—that is, it was hauling interstate passenger trains precisely the same as was the case for several years before the accident; that during all of the time mentioned, both before and after the accident, said engine was being operated by the same engineer. The defendant produced no evidence whatever respecting the use to which the defendant put the engine either before or after the accident. Defendant did, however, produce evidence on the other questions, and the witnesses for the defendant in some respects disagreed with plaintiff's statements, and in other respects denied his testimony and gave a different version of the accident and the care defendant had exercised in preventing the same. In view, however, that there is no contention that there was not substantial evidence upon every material issue except the one that the plaintiff at the time of the injury was engaged in interstate commerce, we shall refrain from stating the evidence in other particulars, except in connection with the point decided, if deemed necessary.

Defendant's counsel has cited a large number of cases which he contends sustain his contention that the plaintiff, at the time of the accident, was not engaged in interstate commerce. Among the cases cited upon that point are the following: *Minneapolis & St. L. Ry. Co.* v. *Winters,* 242 U. S. 353, 37 Sup.

Ct. 170, 61 L. Ed. 358; *Pedersen* v. *Delaware Co.*, 229 U. S. 146, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153; *Shanks* v. *Delaware, etc., Ry. Co.*, 239 U. S. 556, 36 Sup. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; *Chicago, etc., Ry. Co.* v. *Harrington*, 241 U. S. 177, 36 Sup. Ct. 517, 60 L. Ed. 941; *Pierson* v. *New York S. & W. Ry. Co.*, 83 N. J. Law, 661, 85 Atl. 233. It is not necessary to refer to the other cases cited by counsel, since all that he contends for is covered by those we have last above cited. We remark that while plaintiff's counsel concede that the Pierson Case, referred to, sustains defendant's contention, yet it must not be overlooked that that case emanates from a state court and not from a federal court.

If, therefore, there is a decision from a federal court which is decisive of the question here, and especially if the federal decision is one that is more recent than the one cited from a state court, it is our duty to follow the federal court rather than the state court, since the question involved is one upon which the federal courts have the ultimate right to speak.

In our judgment the decision in the case of *Law* v. *Illinois Cent. Ry. Co.*, 208 Fed. 869, 126 C. C. A. 27, L. R. A. 1915C, 17, is decisive of the question that the plaintiff, in making the repairs on the engine in question, was engaged in interstate commerce.

In view of what is there said, it is also clear that the evidence in this case is sufficient to sustain the finding of the jury that the plaintiff was so engaged at the time of the accident. As before stated, the defendant produced no evidence upon that question, and hence, if there was any substantial evidence from which the jury had the right to infer that preceding the accident and before it was repaired the engine in question was being used exclusively in interstate commerce, and that after the repairs were completed it was intended to be and was again used in that capacity, the evidence was sufficient to sustain the finding that the engine was an instrumentality which was used in interstate commerce at the time of the accident, and that the plaintiff, in being engaged in repairing it so that it could be continued to be so used, was also

engaged in interstate commerce. The inferences that may be deduced from the undisputed facts in the case at bar are quite different from the inferences that can legitimately be deduced from the case of *Minneapolis & St. L. Ry. Co.* v. *Winters,* supra, on which counsel relies. In that case it was stipulated that the engine on which Winters was making repairs when he was injured had, before the repairs were made, been used in both interstate and intrastate commerce. Indeed, under the facts there disclosed, the engine on one day might have been engaged in interstate commerce exclusively, while on the following or any subsequent day it might have been used exclusively in intrastate commerce. Again, it might have been used in both interstate and in intrastate commerce on the same day. The United States Supreme Court, therefore, held that, inasmuch as it must appear that the instrumentality upon which the injured employee is engaged and injured is at the time of the injury being used in interstate commerce, and that the burden of proving that fact rests upon, the injured employee who seeks to recover under the federal Employers' Liability Act, the plaintiff in that case had failed to prove that the engine there in question at the time of the injury was engaged in interstate commerce. As before stated, the inferences that may be deduced from the undisputed evidence in the case at bar are clearly to the effect that the engine in question for a long time immediately prior to and up to the time of the injury was exclusively used in interstate commerce, and that it was being repaired so that it might be continued to be so used. Indeed, the only purpose for which any one saw the engine used, both before and after the accident, was interstate commerce exclusively.

The plaintiff had thus made a prima facie case, and, the defendant having produced no-evidence upon that question, the finding of the jury is conclusive upon this court. After a careful reading of the opinion in the case of *Law* v. *Illinois Cent. Ry. Co.,* 208 Fed. 869, 872 (126 C. C. A. 27, 30, L. R. A. 1915C, 17), we can see no escape from the foregoing conclusion. That case, as before stated, was decided after the Pierson Case to which we have referred. In

the Law Case it appears that the plaintiff was a "boiler-maker's helper," and was injuerd while repairing what is called a "petticoat," which was a part of the boiler used on the freight engine, and which the plaintiff contended was being used in interstate commerce at the time of the injury. The controlling facts upon which the court based its decision in that case are stated in the opinion in the following words:

"In the instant case the engine was in the shop for what is called 'roundhouse overhauling.' It had been dismantled at least twenty-one days before the accident. Up to the time it was taken to the shop it was actually in use in interstate commerce. It was destined for return thereto upon completion of repairs. It actually was so returned the day following the accident. It clearly did not lose its interstate character from the mere fact that it was not at the time actually engaged in interstate movement, no more than did the dining car in *John-son* v. *So. Pac. R. R. Co.*, 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, while waiting for a train to make the return trip, or than did the car in the Walsh Case while standing on a track awaiting replacement of the drawbar. Were the repairs being made in the roundhouse between two regular daily trips, the engine, while under such repair, would clearly not lose its character as an instrumentality of commerce; and plaintiff, in such case, would have been engaged in interstate commerce. We have not here a case of original construction of an engine not yet become an instrumentality of interstate commerce. It had already been impressed with such use and with such character. Its preservation as such was not a matter of indifference to defendant, so far as its interstate commerce was concerned. See *Pedersen Case,* 229 U. S. 151–152, 33 Sup. Ct. 648, 57 L. Ed. 1125 (Ann. Cas. 1914C, 153). Under the existing facts, can the length of time required for the repairs change the legal situation? If so, where is the line to be drawn? How many days temporary withdrawal would suffice to take it out of the purview of the act? And is it material whether the repairs take place in a roundhouse or in general shops? Is it not the test whether the withdrawal is merely temporary in character? As held in the Pederson Case, the

work of keeping the instrumentalities used in interstate commerce (which would include engines) in a proper state of repair while thus used is 'so clearly related to such commerce as to be in practice and in legal contemplation a part of it.' ''

We remark: The case at bar is entirely different from the case of *Perez* v. *Union Pac. Ry. Co.*, 52 Utah, —, 173 Pac. 236, decided at this term. In that case the instrumentality which caused the alleged injury, although it may have been used in interstate commerce before the injury, it yet had at the time of the injury been withdrawn from such or any commerce, and hence the plaintiff in that case was not injured while engaged in interstate commerce. In this case, however, the plaintiff was injured while engaged in repairing an instrumentality which before the injury had been exclusively used in interstate commerce and was being repaired so as to be again used for the same purpose and was so used after the injury.

It is next contended that the plaintiff assumed the risk. In view that that defense is available as a complete defense under the Federal Employers' Liability Act, and especially in view that the jury found the plaintiff guilty of contributory negligence, counsel for defendant has urged that proposition with much vigor. It is urged that in view that the jury found that the plaintiff was guilty of contributory negligence, therefore it necessarily follows that he also had assumed the risk. Counsel insists that, in order to have found the plaintiff guilty of contributory negligence, the jury necessarily must have found that he knew and appreciated the dangers arising from the use of the emery wheel without protection to the eyes, and that the foregoing are the only essential elements in the defense of assumed risk. He insists, therefore, that we should declare as a matter of law that plaintiff had assumed the risk.

In this case two independent grounds of contributory negligence were pleaded by the defendant, both of which were supported by evidence produced by it. One of the grounds of negligence related to the plaintiff's conduct at the time of the accident, which it was contended by the defendant, was really the proximate cause of the injury complained of by the plain-

tiff, while the other ground of negligence arose after the accident and related to plaintiff's conduct, by which, it is contended, he had aggravated the injury to the eye and hence increased the damages. The jury, therefore, may have found that the plaintiff was negligent in his conduct respecting the treatment of his eye, and may have deducted the amount from the whole amount of damages allowed him for that reason. If that were so, counsel's contention last above stated would necessarily have no application here. Assuming however, for the purposes of this decision, that the jury found that plaintiff's conduct at the time of the injury was negligent, and hence found him guilty of contributory negligence in that .regard, yet it does not necessarily follow that counsel's contention that plaintiff assumed the risk should prevail. The defenses of assumed risk and contributory negligence are entirely independent, and in case there is a conflict in the evidence, or where the facts are such that reasonable men may legitimately draw different conclusions from the evidence, or may arrive at different conclusions, it cannot be determined as a matter of law that either the one or the other defense is established, and the jury may, therefore, find that one of the defenses was established and may also find that the other was not. While in some of the cases there is some confusion respecting the distinction between the two defenses, yet, as a general rule, the courts have found little difficulty in enforcing the true distinction. The distinction is, perhaps, as well and as clearly stated in a few words as that can be done in the case of *Thomas* v. *Quartermaine,* in L. R. 18, Q. B. Div. at page 697, where, in discussing the distinction, it is said:

"But the doctrine of volenti non fit injuria [assumed risk] stands outside the defense of contributory negligence and is in no way limited by it. In individual instances the two ideas sometimes seem to cover the some ground, *but carelessness is not the same thing as intelligent choice.*" (Italics ours.)

The distinction is also very intelligently discussed and clearly stated by the author in 3 Labatt, Mast. & Serv. section 1219 et seq. The fundamental element in assumption of risk, where it is not assumed as a matter of contract, as stated

in the foregoing quotation, is "intelligent choice"; that is, the employee, before he may be charged with having assumed the risk, must not only have fully understood and appreciated the danger, but he, in the very face of the danger, must, voluntarily, have assumed the risk of injury. Nothing short of that constitutes intelligent choice. As a matter of course, whether in any case the risk was or was not assumed must be determined from all the facts and circumstances. But whatever those facts and circumstances are, it must appear therefrom that the employee voluntarily elected to continue in the hazardous work. It needs no argument, therefore, to demonstrate that while in a particular case facts may be such as to justify a finding of both contributory negligence and assumption of risk, yet contributory negligence does not necessarily arise from intelligent choice, and therefore is not necessarily included in assumption of risk, as contended for by counsel.

In view of what has just been said, it was the province of the jury to say which one of the two defenses was established.

It is further contended that the district court erred in excluding certain declarations attributed to plaintiff's mother relating to the treatment of his eye. The declarations of the mother not made in the presence of the plaintiff were clearly not admissible.

Nor did the court err in excluding the proffered evidence respecting the acts of the mother in treating plaintiff's eye. The reason why such acts are incompetent evidence are clearly stated by Mr. Justice Thurman in the case of *Farnon* v. *Silver King, etc., Co.,* — Utah, —, 167 Pac. 675. This question was, however, submitted to the jury under proper instructions.

Nor did the court err in excluding the other statements attributed to the mother. True, she had denied them on cross-examination. The questions propounded to the mother were, however, not proper cross-examination, and, in view that her statements were not material evidence, the defendant was bound by her denials. It is elementary that a witness may not be impeached unless the statements

made by such witness which are sought to be impeached are material.

It is also contended that the court erred in charging the jury upon the question of damages. It is insisted that the court included an element of damages in its charge with respect to which there was no evidence; and, further, that the court permitted plaintiff to recover for loss of earnings before he was of age, which, it is asserted, did not belong to him, but belonged to his mother. It is true that the court charged the jury that they were "authorized to take into consideration * * * whether * * * the injuries * * * have affected * * * his * * * earnings in the past." There was, however, neither allegation nor proof, nor claim of any kind, for lost services or for services during plaintiff's minority. This element of damages was included in the court's charge merely because such elements are usually included in such charges. There is, however, nothing in this case to show that the plaintiff did not support himself from his own earnings, and if he did so he was certainly entitled to them. From a consideration of the court's charge, it is quite clear, however, that the defendant was not, and could not have been, prejudiced by the foregoing statement in the instruction complained of. The jury were clearly informed that they must be guided and controlled alone by the evidence produced before them in arriving at their verdict. While it is true, as a general rule, that it constitutes error to submit to a jury questions of fact or issues upon which there is no evidence, yet it does not always follow that prejudice results from an erroneous charge of that character. Where, as here, there is no claim nor evidence respecting plaintiff's earnings, it will not be assumed that, in view of the charge of the court that the jury must be governed by the evidence, they did allow anything for past earnings. This question was before the Supreme Court of Indiana in the case of *Ohio & M. Ry. Co.* v. *Stein*, 140 Ind. 61, 39 N. E. 246, and in *Lytton* v. *Baird*, 95 Ind. 349, in which cases it was held that such a charge, under the circumstances outlined above, cannot be held to be prejudicial. Moreover, it is assumed by appellant's counsel that,

inasmuch as plaintiff is a minor, he necessarily may not recover anything for loss of services during his minority. That, however, does not of necessity follow, since, under our statute (Comp. Laws 1907, sections 1544 and 3243), the earnings of a minor do not absolutely belong to the parent. If the contract for services is made with the minor alone, then, under section 1544, supra, the employer may safely settle with and pay the minor and the parent has no claim. Here, as we have seen, the mother makes no claim whatever, and hence we cannot see how the defendant could have been prejudiced.

For the reasons stated the judgment should be, and it accordingly is, affirmed; plaintiff to recover costs.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.