# WILLIAMS v. OGDEN UNION RY. & DEPOT CO.

No. 7471. Decided April 18, 1951. (230 P. 2d 315)

530

See 57 C. J. S. Master and Servant, Sec. 539.   Federal employers liability act, evidence in actions under.  35 Am. Jur. Master and Servant, Sec. 515.

*Rawlings, Wallace, Black, Roberts & Black,* Salt Lake City, for appellant.

*D. A. Alsup, Bryan P. Leverich, M. J. Bronson, A. U. Miner, and Howard F. Coray,* all of Salt Lake City, for respondent.

LATIMER, Justice.

This action was brought by plaintiff under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.   It is

admitted the provisions of that act are controlling. The parties will be referred to as they were designated in the trial court.

On December 9, 1946, plaintiff, age 68, while employed by the defendant, Ogden Union Railway and Depot Company, as a switch tender, was injured in the course of his employment. He had been employed by the defendant in numerous capacities for many years and had operated the switches in the area in which he was injured for approximately four years.

The tracks, switches and general area where the plaintiff worked were located near the Weber River, in Ogden, Utah. The main tracks involved extended generally in an easterly-westerly direction and were connected by a cross-over track. There were two switches necessary to be changed in order to permit a train to proceed from one track to the other. A switch shanty is located just south of the cross-over. The switch tenders use this shanty for shelter and as a resting place when not involved in their tasks of moving the switches. Switch stand #1, which is the most westerly of the two switches involved, is approximately 300 feet from switch stand #2, where plaintiff was injured. There is a third switch which is necessary to mention and this is identified in the evidence as the balloon switch. It is a short distance east of the Weber River bridge approximately one-half to three quarters of a block east of the shanty.

On the morning of the 9th day of December, 1946, plaintiff reported for duty just prior to seven o'clock a.m., his shift commencing at that time and continuing until three o'clock p.m. Upon his arrival at work, he was notified that a passenger train was on the balloon track east of the Weber River bridge ready to proceed in a westerly direction along the west-bound main line track across the cross-over and on to the east-bound main line track. At this time, there was

an extra freight train approaching along the west-bound main line track in an easterly direction and a third train awaiting the movement of the other two. In order to permit the trains to continue on their way it was necessary for him to manipulate the three switches. He, therefore, left the shanty, walked to the balloon switch, and changed the switch. He returned to switch #2, changed its position, and then proceeded to switch #1 where the switch position was changed. After the passenger train had proceeded over the cross-over track, plaintiff relined switch #1 to its normal position and then proceeded to switch #2.

Switch #2 is a high stand, main line switch that is positioned between the two main line tracks and is set on two switch ties that extend at right angles from the tracks approximately eight feet from the inside rail. The ties are spaced ten inches apart and there is a switch rod which runs from the switch to the two rails that are to be changed by the movement of the switch. The area between the switch ties is kept free of ballast and dirt to permit free operation of the rod. The area outside these ties is covered with a porous ballast to permit water to seep through and prevent collection on the surface.

There is some dispute about weather conditions on the morning of the accident, but a light snow had fallen on the morning of December 8th, and a section crew had cleared the area of the fallen snow. One man had worked some six hours on that afternoon cleaning the areas around five switches including those manipulated by plaintiff. The section crew's instructions were to clear an area along the track from the switch and around the switch stands. This had been done but a limited amount of snow had been left near and perhaps a small amount of snow had been left on the two switch ties. Pictures taken on the morning of the accident and shortly thereafter showed some snow around the base of the ties and apparently some on top close to the

switch base. There was an area of ballast at the end and sides of the ties which apparently had been cleared entirely of snow. The temperature during the night and morning of December 8th and 9th until the time plaintiff slipped ranged from 42 degrees to 30 degrees Fahrenheit. There was an electrical control box between the inside rail of the main line track and switch #2 which was used for activating the electrically controlled warning semaphores of the type usually used by railroad systems.

On the morning of the accident, after having changed switch #2 and returning thereto for the second operation, the plaintiff lifted the switch handle, started the rotation to move the position of the switch, and slipped, catching his foot between the control rod and tie. He claimed that prior to slipping, because it was early in the morning, dark, cloudy and he was hurrying to perform his duties, he did not look and observe the condition of the area around the switch. However, he testified that after falling he observed a layer of ice on the switch ties around the switch. On the first operation, because of the position of the switch, he stood in the ballast and made the change without difficulty. Upon returning, he stood on the switch tie to operate the switch and because of the presence of the ice on the tie he slipped and fell.

The medical evidence of the attending physician disclosed that plaintiff suffered a double fracture of the upper tibia of his left leg, approximately two or three inches below the knee. The two fractures were some three-quarters to an inch apart. The leg was set in a cast and he remained in the hospital for thirteen days, during which time he was treated by the doctor. He remained home with his leg in a cast until the 23rd day of March, 1947, at which time the cast was taken off. An X-ray was taken in February of 1947, and this, in the opinion of the doctor, showed a complete union with the fracture entirely healed.

On March 25, 1947, the doctor made an entry showing, "Fracture healing well. The casts have been removed. Patient able to walk with crutches and can stand a few moments with weight directly on leg and should be able to return to work in approximately six or ten days." In May, 1947, plaintiff complained that his leg was very tender and on the 23rd day of that month an X-ray was taken which disclosed a slight fracture had developed in the calloused area. Another cast was placed on plaintiff's leg, which was removed approximately two months later. The doctor released patient to go back to work on October 3, 1947. The refracture suffered by plaintiff could have been caused either by his slipping after the first cast had been removed or by a torque in the leg developing while in the cast.

There was other evidence introduced which the parties claim shows negligence and contributory negligence, but we pass it by at this point as it will be referred to when the particular points are hereinafter considered.

The action was tried on the 26th day of May, 1948, before a jury impanelled in the Second Judicial District in and for Weber County. That trial resulted in the jury awarding plaintiff $12,000, arrived at in the following manner: $20,000, which was the full amount prayed for in the complaint, was awarded to plaintiff, but the sum of $8,000 was deducted for his negligence, the jury concluding he contributed to his injury in that proportion.

Defendant filed a motion for a new trial alleging generally the statutory grounds as a reason why it should be granted. The trial judge concluded to grant defendant's request for a new trial and he made the following statement in connection with the motion:

"I will tell you that you needn't argue any further. I am of the opinion this was excessive and I am going to make this ruling. I had some misgivings about the motion for a directed verdict and wondered if I shouldn't have granted it. I am now convinced that I should have granted that

motion. I think that if there is negligence $5,000 would have been suffi-
cient total damages. The jury found that the plaintiff was guilty of con-
tributory negligence to the extent of 40%. I think his contributory negli-
gence shows much more than that. It was over 50%. But I will take it
on the basis of 40% as the jury found and if the plaintiff will accept
$3,000 I will deny the motion for a new trial. If not, the motion will be
granted."

Counsel for plaintiff refused to accept the reduction and
a new trial was granted. The matter came on for a second
trial before another trial judge and after a hearing on the
merits the jury returned a verdict in favor of the defend-
ant of no cause of action.

On this appeal, plaintiff raises the following points: (1)
The trial court abused its discretion in granting defendant's
motion for a new trial; (2) the trial court committed error
in refusing and neglecting to instruct the jury on plain-
tiff's theory of negligence; (3) the trial court committed
error in giving certain instructions; and (4) the jury's
verdict is contrary to the uncontroverted evidence. We
shall treat them in the order stated.

In the case of *King* v. *Union Pacific R. R. Co.*, 117 Utah
40, 212 P. 2d 692, 698, this court announced what
we believed to be the duty of a trial judge in con-
sidering a motion for a new trial. Mr. Justice
Wolfe, speaking for the court stated:

"We cannot agree with the trial judge that the evidence is 'uncontroverted'
in the two respects mentioned by him in his decision. However, as has
been pointed out, it is not necessary that the evidence be uncontroverted
in favor of the moving party before the trial court can grant a new trial.
The evidence in the instant case as to the two particulars mentioned by
the trial judge is conflicting and there does appear in the record sub-
stantial competent evidence which would support a verdict for the plaintiff.
Nothing more need appear. The defendant does not contend that the jury
could not have reasonably found for the plaintiff. The defendant's contention
that a trial judge in most cases should not grant a new trial when the
verdict is supported by substantial competent evidence cannot find support
in the authorities. If what the defendant contends for were the law, the
trial judge would have no authority to weigh the evidence and decide a
question of fact, but he would be limited to determining a pure question
of law as is this court limited by the Constitution when deciding appeals
of cases in law."

In the first trial in this action, there was competent evidence which would have supported a verdict for the defendant. However, plaintiff asserts that the motion was granted on the grounds that the verdict was so excessive as to appear to have been reached because ■ of passion and prejudice. We take a different view of the ruling. It will be observed that the trial judge concluded he should have granted defendant's motion for a directed verdict. If he did so believe, it was because he concluded there was either no negligence on the part of the defendant or that plaintiff's negligence was the sole proximate cause of his injuries. We need only to refer to statements made by the plaintiff to show that the jury could have found for the defendant on either of those issues.

Plaintiff was interviewed three times between the date of the accident and the time of trial. We quote a paragraph from each of the three statements executed by him. On December 13, 1946, he signed a statement which included the following paragraph:

"There was several inches of snow on the ground at this location but in the vicinity of this switch it had been cleaned away but there was a light covering of ice on the ties which was covered with frost and this is what caused me to slip. There was no defective condition of the switch, roadbed or ties or anything else that I know of that contributed to this injury, was merely a case of me slipping due to this light covering of ice and frost."

The next quotations are taken from a statement signed February 20, 1947:

"* * * I was turning the switch in the prescribed manner and the way that I had always turned the switch and there was nothing out of the ordinary about the manner in which I was doing my work. There was nothing whatsoever defective about the switchstand or the ties or in fact there was nothing about any of the company equipment which caused or contributed to my injury.

* * * * * *

"There was nothing that the OUR&D Co. or any of its servants could have done to have prevented this accident. It is just one of those acci-

dents that happens as I put it, the Great Almighty Himself was responsible for what happened to me."

On November 29, 1947, plaintiff signed a statement containing the following explanation:

"The morning of this accident, the ties and all in the vicinity of the accident was a sheet of ice. This had been brought about by the fact that the night before it had rained and then frozen, the snow on the ground had become kind of hard and it was from a prior snow. The condition which I think had something to do with my injury was the fact that the ties and irons were all ice coated, but the cinders and gravel were not icy as the water had went through them."

In quoting these excerpts, we have not overlooked plaintiff's explanation that they were taken under unusual conditions and that he did not carefully read the statements before signing. Be that as it may, they furnish evidence which can be considered in determining whether there was testimony to support a verdict in favor of defendant.

There are other facts which we narrate that bolster the contention that a verdict could have been rendered for defendant. If we consider the question of negligence, there was evidence that the last snow storm was some eighteen hours before plaintiff's injury. The railroad crew had cleaned the area around the switch ties so that firm footing could be obtained in the ballast, and most, if not all, of the snow had been removed from the ties. The temperature during the afternoon and night varied so that there may have been some melting of the snow and a subsequent freezing. There had been no precipitation from 12:45 p.m. December 8th, until 7:00 a.m. December 9th. There was evidence that the slippery condition of the ties could have been caused by frost and it would be impossible for the defendant to protect against that condition. The plaintiff had operated the switch on the day of December 8th, after the storm was over and the area was cleared. He must have believed the area to be reasonably safe as a shovel and broom were readily available for policing the

area and the train movements, some 8 to 10 during his eight-hour shift, permitted ample time to correct any apparent hazard. Other switch tenders had worked during the afternoon and night of December 8th and 9th and they seemed to assume that conditions were safe. The only protective measure which plaintiff claims should have been taken by the defendant, but was not, was the sprinkling of salt or sand on the ties and around the places where the men stood on the ballast. The use of sand was undesirable as it would have packed in the ballast and prevented the water from seeping through the ballast, thereby rendering the area more dangerous. The use of salt was questionable because the electrical apparatus might be interfered with and the signal system interrupted. From these facts, the jury could have found that the defendant exercised due care in maintaining the area under the existing climatic conditions.

The first jury concluded plaintiff was guilty of contributory negligence and we believe there could have been a dispute about whether his negligence was the sole proximate cause of the accident. There was evidence that the operation of the switch did not require the plaintiff to stand on the ties. He could have used the ballast area, which was safe. He was operating a main line switch which activated the signals system and this required good contacts between the rails. Considerable force was necessary to assure firm connections and a sound footing was necessary to accomplish his task. Plaintiff knew the weather conditions would render the ties slippery and unsafe, yet he chose to stand where he would be readily subject to slipping if he exerted any force in rotating the switch handle.

Even were we to assume that the trial judge granted the motion solely on the ground that the damages were excessive, we could not hold, as a matter of law, that he abused his discretion. The jury awarded the plain-

tiff the full amount of damages he prayed for. ■
Reasonable minds might conclude that $20,000 was entirely disproportionate to the damage suffered. Undoubtedly, when we get in the domain of general damages reasonable jurors differ as to what amount is excessive, and so do reasonable judges. We have previously detailed the medical testimony of the attending physician and, while it may be more favorable to defendant than is the testimony of plaintiff, it can, when considering disputes on the evidence, be used as a basis for determining the reasonableness of the award for damages suffered. The doctor's evidence showed that plaintiff could have returned to work not later than October, 1947, and, if so, his special damages would have approximated $2,700. The remaining sum of $17,300 would have been awarded for pain and suffering and, in view of the nature and extent of the injuries attributable to the accident, a reasonable mind might conclude the amount awarded was so excessive as to appear to have been arrived at because of passion and prejudice. Sec. 104—40—2(5), U.C.A. 1943, authorizes the trial judge to grant a new trial under those circumstances. We are of the opinion that the facts and circumstances of this case are not such as to require us to find the trial judge abused his discretion in granting a new trial on either ground.

By so holding, we do not approve of the reasoning of the trial judge. Conceding trial courts have wide latitude in granting motions for a new trial, jury verdicts should not be adjusted to meet the individual views of trial judges. The power to require remissions should not ■ be used as a sword to require minor variations in the proportions of contributory negligence to negligence. To suggest a 10 per cent difference in the remission indicates an attempt to confine the jury to exact standards conceived by the judge. Jury verdicts need not be tailored to exact specifications. Furthermore, the power to remit should not be used for bartering purposes to settle law suits on court

imposed terms. It should only be used in those cases where substantial justice will not result by permitting the verdict to stand. If the trial judge was correct in his observations that a directed verdict should have been granted, plaintiff was not entitled to $3,000. He was not entitled to recover. Conversely, if both defendant and plaintiff were negligent, the latter was entitled to recover a fair amount for his injuries unless his negligence was the sole proximate cause of his injuries.

Plaintiff's second point deals with the contention that the trial judge committed prejudicial error in refusing to instruct on plaintiff's theory of the case.

Plaintiffs alleged grounds of negligence were that the defendant failed to furnish a safe place to work in that it allowed the switch ties to become and remain covered with ice; that the ties were permitted to project above the level of the ballast; and that it allowed the switch rod to remain in a dangerous position between the ties, five inches above the ground. In his requested instructions, plaintiff does not deal specifically with the two latter grounds, but submitted instructions covering only the icy and slippery condition of the ties and the failure to sprinkle the surface of the ties and the ballast area with either salt or sand.

Apparently, the theory of the case was that the defendant was responsible for the acts of its agents in not entirely removing the snow and ice from the switch area or in failing to cover the surface with some substance to prevent a slippery condition from arising. The court in instructing the jury appears to have covered the grounds of negligence with the possible exception that the instructions do not specifically mention the failure to sprinkle salt or sand on the ice.

After defining the terms necessary for a clear understanding of the instructions, the court in instructing the jury covered plaintiff's theory by charging as follows:

that the action was brought under the F. E. L. A. act, which provides that a railroad company, while engaged in interstate commerce, is liable in damages to an employee in cases where his injury results, in whole or in part, from the railroad company's negligence; that the state compensation act is not applicable; and that the jurors are to disregard any and all concepts which they may have gained as to the law of negligence in cases not arising under the federal act; that the plaintiff alleged the defendant was guilty of negligence in failing to furnish him a safe place to work in that it allowed the ties on which the switch was located to become and remain covered with snow and ice, causing them to be in a slick, slippery and unsafe condition; that an employer is civilly liable for the negligent acts or omissions of a fellow servant or employee committed within the scope of his employment, if the negligence contributes, in whole or in part, to plaintiff's injury; that it was the duty of the defendant railroad company to exercise reasonable care to provide its employees with a reasonably safe place to work; that this duty did not require the elimination of all dangers, but only required the elimination of those which the exercise of reasonable care would remove or guard against; that before finding a verdict for the plaintiff the jurors must believe from a preponderance of the evidence and fair inferences therefrom that the plaintiff was injured by reason of the acts of negligence set forth in a previous instruction (failing to provide a reasonably safe place to work); that the mere happening of an accident was not proof of negligence on the part of defendant or contributory negligence on the part of plaintiff; and that before the plaintiff could recover the jury must find from a preponderance of the evidence that the defendant was negligent in the manner previously set forth.

A reading of the requested instructions shows that the theory advanced by plaintiff was covered with the possible exception that the court did not specifically mention failure

to sprinkle salt or sand on the area. The evidence does not establish that the failure to use sand would in law constitute negligence. We believe that the instructions are broad enough to cover any reasonable means which the defendant should have taken to make the area safe including the use of salt if the jury concluded that to be a reasonable precaution under the conditions.

The instructions were not given in the sequence narrated above, but they did require the jury to determine the question as to whether the defendant furnished a reasonably safe place to work. The charge, as a whole, permitted the jurors to find for plaintiff if they found that the defendant negligently allowed the ties to become and remain covered with snow and ice causing them to be slick, slippery and unsafe.

The instructions may not in all regards be models of clarity, they may not present the legal principles in the best manner, and the sequence in which they are given may have a tendency to make them difficult to follow. However, the jurors were directed to consider them together and we must assume they followed this direction. Furthermore, the judge, at the second trial, adopted the instructions given at the former hearing and, with the exception of instruction no. 19, which will be considered later, counsel for both parties were aware of the theory upon which the case had been originally submitted to the jury. After being aware of the form and contents of the instructions previously used; after hearing the charge repeated at the second trial and after being requested to make known to the court any reasons they had to complain of errors of an elemental nature, plaintiff's counsel stated "we have none." A failure to instruct on one party's theory would seem to be a fundamental error which should have been called to the attention of the trial judge when he made the request.

Plaintiff's third point attacks other instructions given

by the court, including no. 19. This instruction treats with the duty of an employee to select a safe method of doing his work. A somewhat similar instruction was condemned by this court in the case of *Coray* v. *Southern Pacific Co.,* 119 Utah 1, 223, P. 2d 819. We need not pass on the question as to whether the instruction as finally given in this case in all respects accurately states the law. We merely state it is not subject to the same infirmities pointed out by us in the Coray case. We do not examine the instruction in detail for the reason that plaintiff failed to properly preserve the error, if any, for review by this court. When the instructions were prepared by the court, counsel were asked whether they desired to take their exceptions before the instructions were read. Both sides agreed to make their record in the absence of the jury. The original wording in instruction no. 19 was substantially the same as the one quoted in the Coray case. However, the court, after the jury had retired, expressed doubt about it stating correct principles of law. After plaintiff's counsel pointed out the parts they believed erroneous, the judge conceded their exceptions were well taken. He thereupon redrafted the instruction to meet the objections, recalled the jurors, told them to disregard the former instruction and to consider only the corrected one. Counsel for plaintiff were apparently satisfied that the revised instruction reflected correct principles of law. This conclusion is fortified by the sequence of events. Before the corrected instruction was read to the jury, a discussion was held between the court and counsel about the instruction and the judge made the following statement: "I will tell them (jurors) to disregard instruction no. 19 recited to them and consider instruction no. 19 what I am about to read. Is that agreeable?" Counsel for both parties answered in the affirmative. The corrected instruction was then read and no further exception was taken by counsel.

The criticism of instruction no. 12 need receive only passing attention. The questioned instruction ■ was as follows:

"The burden is upon the plaintiff to prove by a predonderance of the evidence that the defendant was negligent and that such negligence was a proximate cause of injury to the plaintiff. To establish the defense of contributory negligence the burden is upon the defendant to prove, by a preponderance of evidence, that the plaintiff was negligent and that such negligence contributed in some degree as a proximate cause of the injury."

Plaintiff stresses the contention that the court revived the doctrine of contributory negligence by permitting it to be used as a bar to plaintiff's right to recover. We question whether the instruction is subject to the interpretation asserted by plaintiff. But, assuming such is the case, there were other instructions which clearly set forth that contributory negligence is not a bar to the action but might be considered by the jury to diminish the amount of the recovery. Furthermore, the instructions on the form of the verdict and the verdict itself set up the method of arriving at the net amount by requiring the jury to first assess the damages; second, to determine the amount of diminution chargeable to contributory negligence; and, finally, to determine the amount to be awarded. Considering the instructions together, the error, if any, could not have been prejudicial.

The last contention attacking instructions raises the question of the court's error in giving instruction no. 10. The questioned portion of the instruction is as follows: "The jury is instructed that the mere happen- ■ ing of the accident to plaintiff is no proof of negligence on the part of either the plaintiff or defendant or evidence of same. * * *"

This instruction applies with equal force to the negligence of the defendant and the contributory negligence of the plaintiff. Contrary to plaintiff's contention, it does not

withdraw from jury consideration the facts and inferences which might reasonably be considered by the jury in determining negligence of the defendant. Laying aside those cases involving the doctrine of *res ipsa loquitur*, the part of the instruction challenged in this court is correct as an abstract principle of law. By way of illustration, if the ties were rendered slippery by frost which had accumulated immediately before the accident, or by other weather conditions over which defendant had no control, the mere fact that plaintiff slipped would not charge the defendant with negligence. We see no reason in this case why the jurors should have been led to believe that the instruction was limiting them in drawing reasonable inferences from the testimony of the witnesses. Undoubtedly, any juror would conclude that if plaintiff slipped, as he contended, it would be because the surface of the tie was slippery and that his place of standing was unsafe. The jurors would then consider the question of whether the slippery condition could have been reasonably prevented by the defendant. If so, under other instructions, a finding of negligence would follow. These matters were properly before the jury and the instruction does not prevent their consideration.

One other reason requires us to overrule this assignment. The exception taken was to the whole of the instruction because it emphasized and repeated the contents of an instruction defining the terms used in the instructions. Such an exception does not require that we consider █ isolated sentences contained in the instruction when other portions correctly announce the principles involved. Here, other portions of the instructions are correct. See *Ryan* v. *Beaver County*, 82 Utah 27, 21 P. 2d 858, 89 A. L. R. 1253; and *Coke* v. *Timby*, 57 Utah 53, 192 P. 624.

In answer to plaintiff's last point, we call attention to the rule repeatedly announced in cases of this character, that is, if the verdict and judgment are supported by competent evidence, then this court may not disturb

them. *See Ercanbrack* v. *Ellison,* 103 Utah, 138, 134, ▉▉▉ P. 2d 177; *Sine v. Salt Lake Transportation Co.,* 106 Utah 289, 147 P. 2d 875; and *Horsley* v. *Robinson et al.,* 112 Utah 227, 186 P. 2d 592.· A review of the record impresses us with the belief that the facts of this case bring it within the foregoing rule and that the judgment must be affirmed.

It is so ordered. Costs to respondent.

WOLFE, C. J., and WADE, McDONOUGH and CROCK-ETT, JJ., concur.