350 P.2d 404

D. Paul FERGUSON, Plaintiff and Appellant,

v.

Jeffrey Paul JONGSMA, J. Jacob Jongsma, Vaughn William Kay and Albert Kay, Defendants and Respondents. ·

No. 8897.

Supreme Court of Utah.

March 22, 1960.

Van Cott, Bagley, Cornwall & McCarthy, Grant Macfarlane, Jr., Salt Lake City, for appellant.

Rich & Strong, Salt Lake City, for respondent.

WADE, Justice.

From a judgment on a jury verdict finding no cause of action for injuries received in attempting to arrest two of the defend-

ants whom he caught siphoning gasoline from a parked truck, plaintiff appeals.

The following facts are not disputed: plaintiff lives at 2531 East on 4800 South Street near Holladay in Salt Lake County. Gasoline had been siphoned from a number of cars and trucks while parked on the street at night in that neighborhood. Plaintiff, who had been a deputy sheriff and had arranged to return to that position shortly, had received complaints from neighbors whose gas had been stolen. About 11:30 p. m. on the night of August 30, 1956, plaintiff was informed that gas was being siphoned from a truck parked on the street opposite his home. He took a large flashlight and an unloaded revolver and went into the street to investigate. Stopping in the middle of the street, he saw a truck parked on the south side of the street slightly to his east facing east with the legs of a man protruding from under it. This man was siphoning gas from the gas tank. He also saw a car parked on the north side of the street facing west with the lights out and the motor running with a person sitting behind the wheel. The defendant Jeffrey Jongsma was the person behind the wheel of the car. The car was owned by defendant Albert Kay, who had entrusted it to defendant Vaughn Kay, his son, whose legs were protruding from under the truck. Plaintiff shouted: "Both of you come out where I am." After a few seconds the car started to move and plaintiff turned the flashlight on the gun so the driver could see it and shouted: "Stop or I will shoot."

There is a conflict in the evidence of what else happened. According to the plaintiff, the car traveled slowly at first, but after moving from three to ten feet, and after he had shouted "Stop, or I'll shoot," the speed was accelerated and it was turned very sharply so that it came directly toward him and he had to step aside to avoid being hit. As he did so the driver's door was thrown open and to avoid being hit by the door he raised his arms so they went through the glass-lowered window of the open door and the door went shut with plaintiff hanging across it. There was no running board so his feet and legs were hanging outside the door and his arms and hands were inside; he was still holding the gun in one hand and the flashlight in the other. Plaintiff claims he continually begged Jongsma to stop the car, and Jongsma told him "to go to ———," that the car continued to accelerate while Jongsma leaned to the other side with his head in a blinded position behind the dashboard. The car was veering to the south side of the road and plaintiff was afraid to drop off until he had passed a car parked on that side of the street. By that time the car was traveling too fast to drop off in safety. The car continued to accelerate and veer to the south into a power pole, which was sheered off, and plaintiff and the car came to rest separately on a lawn south of the

road. Jongsma got out of the car and ran and plaintiff at first ran after him. Plaintiff produced proof of injuries and hospital treatment from this accident.

According to plaintiff's estimates of positions and measurements of distances, the car traveled diagonally from where it was parked to where the door contacted plaintiff about 20 feet. From there to a utility pole east of the car, which was parked on the south side of the road, was 37 feet, and to the power pole which was sheered off 157 feet, or a total of 214 feet from where the car was parked to where it contacted the power pole. Plaintiff estimated that the car started slowly, then after traveling from three to ten feet was greatly accelerated and was traveling about 25 miles an hour upon passing the car which was parked on the south side of the street and about 40 miles per hour when it hit the power pole.

Jongsma's testimony was different. He contradicted statements which he admitted having previously made. He was first called by plaintiff and testified as an adverse witness and when called by his own attorney he contradicted some of the previous testimony stating that he didn't think straight until after talking with his attorney, which was after giving his previous testimony. He admitted that he gave to the officers 30 miles per hour at midway and 40 miles per hour as his speed when he struck the power pole, but he indicated in his testimony that the car traveled much slower than the speeds given. He repeatedly testified that he had no idea how fast he was going. He testified that he did not turn the car toward the plaintiff but merely edged slightly southward to get all wheels on the pavement then traveled directly westward about three or four feet north of where plaintiff stood, and that plaintiff stepped over to the car and jumped onto the door. He first said the door was loose and that it came open when plaintiff grabbed it and that plaintiff jumped onto the open door, putting both arms around the door post while hanging across the open door. Later he denied this, claiming he had been confused, and testified that plaintiff leaned over the door through the open window with the flashlight in one hand, the gun in the other, near his head behind the wheel and ordered him to "Stop the car or I'll shoot." He further admitted that he made no effort to stop the car, that he was driving at night without lights and could not see the road, attributing this in part to plaintiff's bright flashlight shining in his eyes, but he denied that he ducked his head behind the dashboard. On cross-examination he reluctantly admitted that the car was accelerated by his foot on the gas, claiming that it was not intentional, but he admitted that he did not try to stop and that his object in driving the car was to get away. He estimated that the car went 25

or 30 feet before it came by the place where plaintiff was standing.

Plaintiff contends that the court prejudicially erred by refusing to charge the jury that contributory negligence is no defense to wilful, wanton, or reckless misconduct and instructing the jury that if they found plaintiff guilty of contributory negligence he could not recover.

 Plaintiff complains that the court refused to submit to the jury this issue of fact, which under his theory, if found in his favor, would entitle him to recover. In determining this question we must view the evidence of facts and the inferences to be drawn therefrom in the light most favorable to plaintiff. If the plaintiff produced prima facie proof from which the jury could reasonably find facts, which, under plaintiff's theory of the case, would entitle him to recover, the court committed prejudicial error.[1]

 Although plaintiff's own negligence, which proximately contributed to his injuries, bars his recovery from a defendant whose mere ordinary negligence would otherwise have made him liable for plaintiff's injuries,[2] his mere ordinary contributory negligence does not bar a recovery by plaintiff for injuries proximately caused by defendant's wilful, wanton or reckless disregard[3] for plaintiff's safety.[4] Only where plaintiff, knowing of defendant's reckless disregard for his safety and the danger to plaintiff thereby created, recklessly exposes himself to such dangers and thereby proximately contributes to cause his injuries does plaintiff's contributory negligence bar his recovery.[5] Thus, while ordinary contributory negligence bars plaintiff's recovery for damages to him, which was proximately caused by defendant's ordinary negligence, where, however, plaintiff's injuries were proximately caused not by ordinary negligence but by reckless disregard for plaintiff's safety, mere ordinary negligence of the plaintiff does not bar his recovery.

1. Beckstrom v. Williams, 3 Utah 2d 210, 282 P.2d 309; Morgan v. Bingham Stage Lines Co., 75 Utah 87, 283 P. 160, and cases therein cited.
2. See Restatement of the Law of Torts, Negligence p. 1236, Section 467.
3. It is generally held that if a reckless disregard is shown wilfulness nor wantonness is necessary but since these terms require a greater degree of disregard for safety their use in an instruction would not be harmful. For a definition of the term reckless disregard see the discussion in Jensen v. Denver & R. G. Railroad Co., 44 Utah 100, at pages 112 and 113, 138 P. 1185, at pages 1188 and 1189; Wood v. Taylor, 8 Utah 2d 210, 213–214, 332 P.2d 215; also Restatement of the Law of Torts, Negligence, Reckless Disregard of Safety, pp. 1293–1299, Sections 500–503.
4. See Jensen v. Denver & R. G. Railroad Co., 44 Utah 100, 138 P. 1185; 2 Cooley on Torts, 3d Ed. 1442; 38 Am.Jur. 854–856, Section 178; 65 C.J S. Negligence § 131, pp. 751–753; Restatement of the Law of Torts, Negligence, pp. 1261–2, Section 482.
5. See Restatement of the Law of Torts, Negligence 1262, Sec. 482, Subd. (2).

So the court refused to give plaintiff's proposed instruction No. 12 involving plaintiff's theory of the issues of fact and the law on this question. That proposed instruction reads as follows:

"You are instructed that it is no defense so far as the injuries to Mr. Ferguson are concerned that he was guilty of negligence contributing to his injuries, if the conduct of the defendant Jeffrey Jongsma in the operation of the Ford automobile amounted to wilfulness, wantonness or recklessness.

"In this regard if you find from a preponderance of the evidence that the defendant Jeffrey Jongsma intentionally turned the automobile he was operating in the direction of the plaintiff and drove said automobile directly at the plaintiff or that the defendant Jongsma intentionally opened the door of the car he was operating in an attempt to strike the plaintiff with said door and if you further find from a preponderance of the evidence that such conduct on the part of the said Jongsma was a proximate cause of the injuries of plaintiff, then you are instructed that the plaintiff is entitled to recover regardless of any negligence on his part."

This was prejudicial error. Without any doubt the jury could have found the facts in plaintiff's favor. The jury could have reasonably concluded that Jongsma started the car slowly then suddenly accelerated the speed and turned the car directly toward plaintiff while he was standing in the middle of the road with his flashlight showing so that Jongsma must have seen him. Such actions would undoubtedly place plaintiff in grave danger and would justify, if not compel, a finding that Jongsma acted in reckless disregard for plaintiff's safety. The evidence would amply justify a finding that when plaintiff stepped out of the path of the car Jongsma pushed the door open, thus greatly increasing plaintiff's danger. With or without the finding that Jongsma opened the door, if the car was driven directly toward plaintiff and the speed accelerated when between 10 and 17 feet away, it would take perfect coordination and no unexpected happening for him to avoid being injured. If plaintiff's timing was not exactly right, if he slipped or stumbled in moving out of the way, or if a door unexpectedly opened as plaintiff's evidence indicates, or any one of many unforeseeable events happened, plaintiff was sure to be injured. This is true even though Jongsma did not intend to injure plaintiff, but only tried to scare him expecting he would get out of the way. The fact that plaintiff was watching the car with confidence of his ability to avoid harm does not make Jongsma's actions less reckless expecially in view of the fact that the only justification for such actions was Jongsma's determination to avoid a lawful arrest regardless of cost. This instruction

correctly applied the law to plaintiff's theory of the evidence and should have been given.

The court's instruction No. 7, and other instructions charging that plaintiff's contributory negligence would bar his recovery, were clearly misleading on the same grounds that the court erred in refusing to give plaintiff's proposed instruction No. 12 charging that if defendant was guilty of reckless disregard for plaintiff's safety, plaintiff's ordinary contributory negligence would not bar his recovery. Instruction No. 7 was also confusing in that it charged that plaintiff's contributory negligence *"in any respect or any degree"* would bar his recovery. For as recently pointed out by this Court [6] this suggests a standard of contributory negligence inconsistent with and lower than the requirement that plaint'ff's contributory negligence must be a proximate contributing cause of his injuries to bar his recovery.

Defendant contends that this instruction was incorrect because it submitted the issue of reckless disregard by defendant for plaintiff's safety but failed to submit the issue of plaintiff's reckless disregard for his own safety with full knowledge of the dangers to which defendant's reckless disregard had exposed him. As previously pointed out such reckless disregard for his own safety would be a bar to plaintiff's recovery even though defendant was also guilty of reckless disregard for plaintiff's safety. This contention, however, is not applicable to the facts here for two reasons: 1) Plaintiff in proposing an instruction on his theory of the case is not required to also propose instructions setting out all the possible defenses thereto. If defendant's desired instructions on defenses to any ground which would allow plaintiff to recover he should propose them. 2) The evidence in this case would not reasonably support a finding that plaintiff while aware of the danger to which defendant's reckless disregard for plaintiff's safety exposed him, was guilty of reckless disregard for such dangers.

Plaintiff's proposed instruction No. 12 authorized the jury to find Jongsma guilty of reckless disregard for plaintiff's safety only if he intentionally turned the car and drove it directly toward plaintiff or if he intentionally opened the car door as he neared the plaintiff. Nothing in this instruction would prevent plaintiff's contributory negligence from barring his recovery if defendant did not turn the car suddenly directly toward the plaintiff. If the car was suddenly turned directly toward plaintiff and was accelerated, after his reaction time expired plaintiff would barely have time to get out of the way. He was confronted with a sudden emergency and his failure to step as far out of the way as possible

---

6. See Johnson v. Lewis, 121 Utah 218, 240 P.2d 498.

would not prove reckless disregard for his safety, especially since plaintiff was attempting to make a lawful arrest and defendant was unlawfully trying to escape.

■ The foregoing discussion is enlightening on plaintiff's proposed instruction No. 7. That proposed instruction charges that a person who, without negligence on his own part is suddenly and unexpectedly confronted with apparent or imminent peril is not required to use the same prudence or good judgment as would otherwise be expected. This instruction is copied from Jury Instruction Forms for Utah No. 15.4[7] and was a correct statement of the law as applied to the facts of this case. Under plaintiff's version of the facts he was obviously suddenly and unexpectedly confronted with one new danger after another from the time the car turned directly toward him until it ran into the power pole. First the car was turned directly toward him and accelerated, then the door came open and plaintiff was dangling across it; the defendant continued to accelerate the car in answer to plaintiff's begging or commanding him to stop; plaintiff saw they were passing a car parked on

the south side of the road with the defendant's car veering that way so he was afraid to jump off, and when they were past the parked car he was afraid to jump off on account of the speed. Jongsma ducked his head to the other side of the car behind the dashboard or in any event could not see where he was driving and continued to accelerate and veer to the left side of the road and finally drove into a power pole. It is hard to conceive of a situation where a person was confronted more completely with a constant string of changing dangers not of his own making. This instruction should have been given.

■ The court's instruction No. 16 charged the jury that plaintiff was not entitled to recover unless it found "from a preponderance of the evidence that the plaintiff himself was not guilty of contributory negligence and that the plaintiff by his actions and conduct did not assume the risk of his injuries." That instruction erroneously placed the burden of persuasion of these two issues on the plaintiff.[8] By other instructions such burden was placed on defendant. This by itself was not prejudicial error but on the new trial it should not be repeated.

7. See Howard v. Ringsby Truck Lines, 2 Utah 2d 65, 269 P.2d 295.
8. See Williams v. Ogden Union Railway & Depot Co., 119 Utah 529, 230 P.2d 315; Tuttle v. Pacific Intermountain Express Co., 121 Utah 420, 242 P.2d 764; my concurring opinion in Gibbs v. Blue Cab, Inc., 122 Utah 312, 249 P.2d 213; Mecham v. Allen, 1 Utah 2d 79, 262 P. 2d 285. Neither in this case nor in the cases above cited nor in any other case called to our attention has anyone ever contended that the plaintiff has the burden of persuading the jury that he was not guilty of contributory negligence or assumption of risk and as far as we are aware it is universally recognized that such burden is on the defendant.

By instructions No. 16 through 20 the court in each instruction set forth a set of facts and instructed that a finding by a preponderance of the evidence of such set of facts would show an assumption of risk by plaintiff and bar his recovery. For a number of reasons these instructions were prejudicial error.

To evaluate these instructions a clear understanding of the difference between assumption of risk and contributory negligence is necessary. These terms are often used interchangeably; sometimes both are used when only one is applicable, and often the term assumption of risk is used when there is a total lack of evidence to support a finding that plaintiff's recovery is barred by that doctrine and under some fact situations both assumption of risk and contributory negligence would bar recovery. If the instruction is based on a factual situation which would support a finding of contributory negligence but the instruction erroneously called it assumption of risk, this alone would not be prejudicial error.

Contributory negligence is based on carelessness, inadvertence and unintended events, but assumption of risk re-

quires an intelligent and deliberate choice to assume a known risk. Assumption of risk requires knowledge by plaintiff of a specific defect or dangerous condition caused by defendant's negligence or lack of due care which plaintiff could have, but voluntarily and deliberately failed to avoid and thereby assumed the risk of the injuries he sustained. On the other hand, contributory negligence requires evidence only that plaintiff failed to use the care for his own safety which an ordinary, reasonable and prudent person would use under the existing circumstances.[9]

Under both the doctrine of contributory negligence and assumption of risk, whether the plaintiff failed to use due care for his own safety or he deliberately assumed the risk of injury in the face of known danger, was a jury question, unless the evidence was so conclusive on those questions that a finding otherwise would be unreasonable and so require a finding against plaintiff as a matter of law.[10]

Only under Jongsma's testimony that he started the car and slowly moved onto the pavement then attempted to drive north of plaintiff, but plaintiff moved over

9. See Johnson v. Maynard, 1959, 9 Utah 2d 268, 342 P.2d 884; Clay v. Dunford, 1952, 121 Utah 177, 239 P.2d 1075; Hamilton v. Salt Lake City, 1951, 120 Utah 647, 237 P.2d 841; Stack v. Kearnes, 1950, 118 Utah 237, 221 P.2d 594; Esernia v. Overland Moving Co., 1949, 115 Utah 519, 205 P.2d 621; Kuchenmeister v. Los Angeles & S. L. R.

Co., 1918, 52 Utah 116, 172 P. 725; Mathews v. Daly-West Mining Co., 1904, 27 Utah 193, 75 P. 722.

10. Esernia v. Overland Moving Co., 1949, 115 Utah 519, 205 P.2d 621; Kuchenmeister v. Los Angeles & S. L. R. Co., 52 Utah 116, 172 P. 725. See also the other cases cited in Footnote 9.

to the side of the car and jumped on the door, would the evidence support a finding that plaintiff assumed the risk of his injuries. By instruction No. 19 the court covered this situation by directing a finding of contributory negligence and assumption of risk barring plaintiff's recovery if "the plaintiff jumped onto the moving automobile and attempted to hang thereon while it was in motion." This statement while including the facts which would support a finding of assumption of risk also required such a finding even though the jury found facts which would not support a finding that plaintiff assumed such risk, but concluded that Jongsma turned the car toward plaintiff and accelerated the speed. This was error for those facts would not support a finding of deliberate assumption of risk. This instruction did not submit to the jury whether under the existing facts and circumstances the plaintiff failed to use due care for his own safety nor whether he deliberately assumed the risk of being injured. The evidence was not sufficient to require such a finding as a matter of law. By plaintiff's own testimony he "jumped onto the moving automobile and attempted to hang thereon while it was moving." The surrounding facts and circumstances are not mentioned in this instruction and a consideration of such additional facts was precluded by the positive direction that if the jury found the existence of the undisputed facts above quoted from that instruction "plaintiff under such circumstances could not recover."

The giving of the last part of instruction No. 16 on whether plaintiff blinded Jongsma by flashing a lighted flashlight in his eyes was prejudicial error for the same reasons as instruction No. 19. The same is true of instruction No. 17, on whether plaintiff pointed a revolver at Jongsma's head, thereby frightening him so that he could not properly drive, and instruction No. 20, on whether plaintiff, having a reasonable opportunity to jump off the car, failed to do so. Instruction No. 18 on whether plaintiff with reasonable care could have moved from the path of the car was less objectionable, for the court submitted to the jury the question of whether an ordinary reasonable and prudent person under similar circumstances would have moved from the path of the car, thus eliminating one of the grounds of prejudicial error of the other instructions.

One other point should be mentioned. Jongsma started the car and drove blindly forward without lights in violation of the law.[11] Further, Jongsma's only purpose in driving the car was to avoid arrest by plaintiff for a public offense committed or attempted in plaintiff's presence, which, under the existing facts and circumstances it was plaintiff's duty to make and Jongsma's duty to submit to.[12] The rights and

11. See Section 41–6–118, U.C.A.1953.

duties of the parties were a proper factor to be considered by the jury in determining whether Jongsma was negligent and whether plaintiff was contributorily negligent or assumed the risk of his injuries. The court's instruction No. 21, charging "that evidence concerning the attempted theft of gasoline is wholly immaterial and should not be considered by you at all" was erroneous for that reason.

Judgment reversed and new trial directed. Costs to appellant.

CROCKETT, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.

12. See Section 77–13–4, U.C.A.1953; 6 C.J.S. Arrest § 8, Private Persons and especially Subdivision c thereof, pp. 605– 608. See also State v. Shockley, 29 Utah 25, 80 P. 865, 110 Am.St.Rep. 639.